April 6,
1955. } No. 4407.

OPINION OF THE JUSTICES.

The following resolution adopted by the House of Representatives on March 10, 1955, was filed in this court March 11, 1955:

"Whereas House Bill No. 327, An Act to provide state aid for nursing education is now pending in the House of Representatives;

"And Whereas part II of said bill provides, grants in aid, subject to certain restrictions, to all eligible hospitals offering training in basic professional nursing;

"And Whereas a substantial number of the hospitals offering such training in this state are conducted under the auspices of a certain religious denomination but need assistance as much as other hospitals;

"And Whereas the Constitution of New Hampshire, Part II, Article 83, contains the following proviso: 'Provided nevertheless, that no money raised by taxation shall be granted or applied for the use of the schools or institutions of any religious sect or denomination;'

"And Whereas there is doubt whether this proviso was intended to apply to a hospital offering training for nurses;

"Resolved that the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions of law:

"(1)  Does part II of said bill conflict with the above-quoted proviso of part II, Article 83, of the Constitution or with any other provision of the Constitution, as applied to hospitals conducted under the auspices of any religious denomination, which comply with the restrictions of section 1, part II of said bill?

"(2)  If the answer to question No. 1 is in the affirmative, is

there any valid way of amending said bill so as to provide public assistance to such hospitals?

"(3) Do any other provisions of said bill appear to conflict with the Constitution?

"Further Resolved, that the Speaker transmit six copies of this resolution and of House Bill No. 327 to the Clerk of the Supreme Court for appropriate action."

The following answer was returned:

*To the House of Representatives:*

The undersigned Justices of the Supreme Court submit the following answers to the inquiries contained in your resolution filed March 11, 1955, with reference to House Bill No. 327, entitled "An Act to provide state aid for nursing education."

Part I of the act provides for a program of annual scholarships to New Hampshire students in basic professional nursing and in advanced nursing education. Part II of the act establishes a program of annual grants in aid to all hospitals in the state which offer approved training in basic professional nursing. The program is subject to the following express limitations: "No hospital shall be eligible for such aid unless it shall be operated exclusively as a charitable hospital, none of the net income or profits of which are distributed among stockholders or members of the hospital, but rather are devoted exclusively to the charitable purposes of the hospital. No hospital shall be eligible for such aid which imposes any religious or other unreasonable discrimination in the enrollment of student nurses, as determined by the board; and such aid shall be used by each eligible hospital solely and exclusively for defraying the cost of training student nurses in basic professional nursing and for no other kind of instruction or purpose."

The act incorporates the principal conclusions of the interim New Hampshire State Commission of Nursing (Laws 1953, c. 301) to the effect that there is shortage of student and graduate nurses creating a serious problem of public health, vitally affecting the welfare of the state and requires remedial action recommended by the Commission. The Commission reported that the "nursing salary schedule in the State of New Hampshire is one of the very lowest prevailing in the United States." The report recommended

the scholarship and grants in aid programs for student and graduate nurses, which are Parts I and II of the act, to avoid the "possibility of a genuine crisis in nursing education."

Hospitals and nurses are recognized essentials of a public health program and have received legislative recognition as serving a public purpose. Municipalities may use public moneys for hospitals, clinics and health centers (R. L., c. 51, s. 4 VI), to aid visiting or district nurses or the American Red Cross (s. 4 VIII), and to support a resident physician (s. 4 XXIII). "The inability of members of a community to receive emergency care and first aid is not entirely a private matter of the person injured. R. L., c. 51, s. 4 VI, VII, VIII and XXIII." Blanchard v. Claremont Eagle, Inc., 95 N. H. 375, 379. The State has recently appropriated public funds for a survey of the building program for hospitals (Laws 1947, c. 247), and for the supervision of education in schools of nursing (Laws 1947, c. 285; Laws 1951, c. 38). In the past it has made outright grants for a medical school and for an infirmary. Act of June 23, 1809, 7 N. H. Laws 813; Act of December 15, 1824, 9 N. H. Laws 378. These statutes indicate the legislative declaration that hospitals and nursing involve a public matter for which state and local funds may be used.

In view of the charitable nature of hospitals (R. L., c. 73, s. 24) the allowance of scholarships and grants in aid presents no constitutional difficulty except in those cases mentioned in your resolution where the hospital is "conducted under the auspices of a certain religious denomination." Part II, Article 83 of the New Hampshire Constitution reads as follows: " . . . provided, nevertheless, that no money raised by taxation shall ever be granted or applied for the use of the schools or institutions of any religious sect or denomination." This proviso of Article 83 was inserted by amendment adopted in 1877. Its sponsor in the constitutional convention stated that it was designed "to prevent . . . the appropriation of any money raised by taxation for purposes of sectarian education." Journal, 1876 Convention, 124. As submitted to and approved by the people, the question was whether they approved of prohibiting such money "from being applied to the support of the schools or institutions of any religious sect or denomination." Id., 275. Article 83 is purposeful and meaningful and is intended to prevent the use of public funds for sectarian or denominational purposes. See, Kinney, Church and State (1955).

Other provisions of the document, of longer standing, which

remained unchanged in 1877, guarantee that "no subject shall be hurt . . . for his religious . . . persuasion," and provide for encouragement of instruction in religion. Const. Pt. I, *Arts.* 5th, 6th. What was intended to be forbidden by the amendment of 1877 was support of a particular sect or denomination by the state, at the expense of taxpayers of other denominations or of no denomination. It was not intended that members of a denomination should be deprived of public benefits because of their beliefs. *Cf. Everson* v. *Board of Education,* 330 U. S. 1, 16.

However, whether Article 83, or similar articles in other constitutions, have been violated or evaded can be determined only by an examination of the factual situation and not by the application of generalizations. This is demonstrated by the decisions in *Everson* v. *Board of Education,* 330 U. S. 1; *McCollum* v. *Board of Education,* 333 U. S. 203 and *Zorach* v. *Clauson,* 343 U. S. 306.

Under this constitutional provision it is necessary to look at the objectives and methods proposed by a statute in order to determine its validity. The purpose of the grant proposed by House Bill 327 is neither to aid any particular sect or denomination, nor all denominations, but to further the teaching of the science of nursing. No particular sectarian hospital is to be aided, nor are all hospitals of a particular sect. The aid is to be available to all hospitals offering training in nursing without regard to the auspices under which they are conducted or to the religious beliefs of their managements, so long as the aid is used for nurses' training "and for no other kind of instruction or purpose." If the injunction of the proposed statute is followed, as it must be (*Holt* v. *Antrim,* 64 N. H. 284), the public funds will not be applied to sectarian uses. If some denomination incidentally derives a benefit through the release of other funds for other uses, this result is immaterial. *Brooks* v. *School District,* 73 N. H. 263, 265. The use of the grant is adequately limited by the proposed statute, *Eyers Woolen Co.* v. *Gilsum,* 84 N. H. 1, 15, and the training which will thereby be provided is subject to the supervision of the State. Laws 1947, c. 285. A hospital operated under the auspices of a religious denomination which receives funds under the provisions of this bill acts merely as a conduit for the expenditure of public funds for training which serves exclusively the public purpose of public health and is completely devoid of sectarian doctrine and purposes. This does not violate the Constitution. *Kentucky Bldg. Commission* v. *Effron,* 310 Ky. 355; *Bradfield* v.

*Roberts,* 175 U. S. 291. See *Holt* v. *Antrim,* 64 N. H. 284.

The fundamental proposition that public moneys shall be used for a public purpose only has not prevented the use of private institutions as a conduit to accomplish the public objectives. *Velishka* v. *Nashua,* 99 N H. 161; *Opinion of the Justices,* 94 N. H. 515; *Opinion of the Justices,* 95 N. H. 548; *Opinion of the Justices,* 88 N. H. 484; *Conway* v. *Water Resources Board,* 89 N. H. 346, 349. This proposition received support in *Keene* v. *Roxbury,* 97 N. H. 82, 85: "A use may be entitled to aid under the protective power, as a public enterprise, even though made in a private or proprietary capacity, and even though the entire community does not directly enjoy it." The same principle may be applied without violating the prohibition against using public funds for sectarian as distinguished from private purposes.

Assuming that the General Court accepts the legislative declarations of purposes and facts stated in the preamble to House Bill No. 327 we are of the opinion that the answer to questions 1 and 3 is no, which makes it unnecessary to consider question 2.

> FRANK R. KENISON.
> LAURENCE I. DUNCAN.
> AMOS N. BLANDIN, JR.
> EDWARD J. LAMPRON.
> JOHN R. GOODNOW.

April 6, 1955.

*Richard F. Upton* for New Hampshire State Nurses Association; and *Burns, Calderwood & Bryant* for L'Hopital Notre Dame de Lourdes, St. Joseph's Hospital of Nashua, L'Hopital de St. Louis de Berlin, Sacred Heart Hospital; for negative answers.