Request of Governor and Council, No. 5683.

## Opinion of the Justices.

Submitted August 31, 1967.
Answer returned October 6, 1967.

The following resolution was adopted by the Governor and Council August 15, 1967 and filed in this court on August 17, 1967:

"WHEREAS, the General Court in 1963 enacted legislation relating to the conduct of sweepstakes races and the sale of tickets thereon, as set forth in Laws 1963, Chapter 52; and

"Whereas, the General Court by Laws 1965, Chapter 239:15 amended in certain respects, RSA 284:21-j, as inserted by Laws 1963, Chapter 52; and

"Whereas, the General Court by Laws 1967, Chapter 421:1 amended RSA 284:21-j as inserted by Laws 1963, Chapter 52:1 and amended by Laws 1965, Chapter 239:15, so that the said section as amended reads as follows: '284:21-j Establishment. The state treasurer shall credit all moneys received from the sweepstakes commission, and interest received on such moneys, to a special fund from which he shall pay all expenses of the commission incident to the administration of this subdivision and shall pay out on December 15 of each year to the school districts of the state on a flat grant per resident pupil basis and to the chief administrative officer of nonpublic schools on a flat grant per elementary and secondary pupil basis, who is a resident of the state any balance in said special fund. Such grants shall be used for educational purposes and no part of said special fund shall be diverted by transfer or otherwise to any other purpose whatsoever;' and

"Whereas, Paul E. Farnum, Commissioner of Education, by letter dated July 24, 1967, to the Governor and Council has raised certain questions concerning Laws 1967, Chapter 421, particularly relating to the legality of payment to parochial and certain private schools of a proportionate share of sweepstakes proceeds; and

"Whereas, we are in doubt as to the distribution of said proceeds, in view of the provisions of Part II, Article 83 of the New Hampshire Constitution; and

"Whereas, the preamble of Laws 1967, Chapter 421 recites that ' . . . parochial and certain private schools in the state of New Hampshire contribute greatly to lessening the burden of the tax payers in supporting public education and . . . there is great sentiment and feeling that the general public of the state of New Hampshire should in some way alleviate economic burdens of these parochial and private schools which are not privately endowed . . . ', but the amendment of RSA 284:21-j by Laws 1967, Chapter 421 does not define a privately endowed school, does not specify to what extent a school can receive

financial support from sources other than taxes and yet be considered not privately endowed, and does not indicate whether sweepstakes proceeds are to be distributed to the numerous private kindergartens and special schools that are not privately endowed; and

"Whereas, in view of all the circumstances we are in doubt as to the nonpublic schools which are entitled to participate in the distribution of said proceeds; and

"Whereas, in view of all the circumstances we are in doubt as to the legality of payment to parochial and certain private schools of a proportionate share of said proceeds; and

"Whereas, the resolution of such doubts is of great importance to us in the performance of our executive duties;

"Now, Therefore, Be it

"RESOLVED, by the Governor and Council assembled in Executive Session, that the Justices of the Supreme Court be respectfully requested under the provisions of Part II, Article 74 of the New Hampshire Constitution to give their opinion upon the following important questions of law:

"1. Does Part II, Article 83 of the New Hampshire Constitution, which provides, in part, that ' . . . no money raised by taxation shall ever be granted or applied for the use of the schools or institutions of any religious sect or denomination . . . ' prohibit the use of sweepstakes money as provided by Laws 1967, Chapter 421?

"2. If the answer to question No. 1 is in the negative, does Laws 1967, Chapter 421 conflict with or violate any other provisions of the New Hampshire Constitution?

"3. If the answers to questions Nos. 1 and 2 are in the negative, are sweepstakes proceeds state or public funds which the First Amendment of the United States Constitution would prohibit from being distributed to parochial or private schools?

"4. If the answers to questions Nos. 1, 2 and 3 are in the negative does Laws 1967, Chapter 421 require that a nonpublic school to be eligible to participate in the distribution of sweepstakes proceeds be one which is not privately endowed?

"5. If the answer to question No. 4 is in the negative, what criterion is to be used to determine eligibility?

"6. If the answer to question No. 4 is in the affirmative, what criterion is to be used to determine when a school is not privately endowed?

"7. If the answer to question No. 4 is in the affirmative, to what extent can a school receive financial support from sources other than taxes and yet be considered not privately endowed?

"8. If the answer to question No. 4 is in the affirmative, are the numerous private kindergartens and special schools that are not privately endowed to be included as eligible participants in the distribution of sweepstakes proceeds?"

The following answer was returned:

*To his Excellency the Governor and the Honorable Council:*

The undersigned Justices of the Supreme Court submit the following answers to the questions contained in your resolution filed in this court on August 17, 1967.

You have submitted several questions relating to the amendment to RSA 284:21-j enacted by the General Court as Laws 1967, 421:1 which provides for the distribution of certain revenue received from the sweepstakes to nonpublic elementary and secondary schools as well as to public school districts. Since our answer to question three makes it unnecessary to answer any of the other questions we proceed directly to it. Question three reads in part as follows: "[A]re the sweepstakes proceeds state or public funds which the First Amendment of the United States Constitution would prohibit from being distributed to parochial or private schools?"

Since the amendment provides for distribution of money to all nonpublic elementary and secondary schools this would include parochial and other religiously oriented schools as your question recognizes. This intention is expressed in the preamble to Laws 1967, chapter 421.

While nonpublic schools, other than parochial and religiously oriented schools, would benefit under the amendment it is common knowledge that parochial schools predominate among the non-public schools that "lessen the burden of the tax payers in supporting public education" which the amendment seeks to aid. Laws 1967, c. 421 ( preamble ).

Parochial schools as that term is generally understood in this state are an integral part of a religious organization and an important purpose of these schools is to advance the aims and purposes of the Church and its ministry through religious education as part of the regular program of instruction. Any financial

aid to the schools is of necessity therefore aid to the Church and to the teaching of religion.

We wish to make it very clear that we intend in no way to disparage the lofty goals of church-sponsored schools. Our task is to decide a constitutional issue and our opinion relates to that issue only. It is necessary however for us to recognize the relationship between the Church and parochial schools. This is important to the determination of the constitutional issue because the First Amendment to the Constitution of the United States provides in part that "Congress shall make no law respecting an establishment of religion . . . . "

When originally adopted the First Amendment applied only to the Federal Government and its restrictions were applicable only to Congress. After the adoption of the Fourteenth Amendment it became applicable to the states and the prohibitions directed at Congress are now directed also at all state legislatures and local legislative bodies. *Cantwell* v. *Connecticut,* 310 U. S. 296; *Abington School Dist.* v. *Schempp,* 374 U. S. 203, 216.

The Supreme Court of the United States has stated that under the prohibitions of the First Amendment neither the Federal Government nor a state "can pass laws which aid one religion, aid all religions, or prefer one religion over another." *Everson* v. *Board of Education,* 330 U. S. 1, 15. See also, *Abington School Dist.* v. *Schempp,* 374 U. S. 203, 216. In *Zorach* v. *Clauson,* 343 U. S. 306, 314, the court said, "Government may not finance religious groups nor undertake religious instruction nor blend secular and sectarian education . . . . " In that case the court upheld a New York statute permitting "released time" for pupils to obtain religious instruction off the public school premises. The court pointed out however that the program involved neither religious instructions in public schools "nor the expenditure of public funds." *Id.,* 308-309. The court, with but one dissenting vote, had previously held invalid under the First Amendment an Illinois statute which provided for "released time" for religious instruction to be conducted on the public school premises by Protestant teachers, Catholic priests and a Jewish rabbi, because school buildings and a school system supported by public funds were being utilized to aid religious education. *McCollum* v. *Board of Education,* 333 U. S. 203.

It cannot seriously be questioned that the proceeds from the

sweepstakes are public funds, which, as all the Justices agree, cannot be used "to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion." *Everson* v. *Board of Education, supra*, 16.

Both the majority and the minority in the *Everson* case agreed that the First Amendment erected "a wall of separation between church and State." They disagreed as to the facts of the case and the proper application of the constitutional prohibition to those facts. Transportation at public expense for all children attending school was upheld even though it included those attending parochial schools on the basis that the aid was extended to the pupils or their parents and not to the institutions and that the aid was in the nature of public welfare legislation to eliminate for all pupils the "risk of traffic and other hazards incident to walking or 'hitchhiking'." ( *p.* 7 ) The court was careful to point out however that "the State contributes no money to the [parochial] schools. It does not support them." *Id.,* 18.

The same aid to the pupil theory was used in the recent case of *Board of Education* v. *Allen,* 20 N. Y. 2d 109 ( 1967 ) to uphold the expenditure of public funds to purchase books to be loaned to all school children including those attending parochial schools. The opposite result was reached however in *Dickman* v. *School District,* 232 Ore. 238. The furnishing of school books to all pupils including those in parochial schools had been upheld in *Cochran* v. *Board of Education,* 281 U. S. 370 ( 1930 ) but the First Amendment was not in issue in this case since it had not then been held applicable to the states, and the parties did not raise the First Amendment issue. The only issue involved was whether a public purpose was served by the statute.

In any event the statute which we are now considering cannot be equated with those providing for the furnishing of transportation or books directly to the children. The aid granted here is directly and not incidentally to institutions, an important purpose of which is to provide religious instruction. While busing arrangements for pupils attending parochial schools was upheld in *Everson* it was stated in that case that the legislation "approaches the verge" of the power of states. While under Laws 1967, chapter 421 the use of the funds is limited to education it is not limited to secular education. The payment of tuition for

pupils attending parochial schools has been held to violate the First Amendment ( *Swart* v. *South Burlington,* 122 Vt. 177; *Almond* v. *Day,* 197 Va. 419 ) as have statutes providing public funds for the construction of secular-purpose buildings for colleges having religious affiliations. *Horace Mann League* v. *Board,* 242 Md. 645 ( 1965 ). It is our opinion that the statute here considered violates the Establishment Clause of the First Amendment.

It is argued that *Abington School Dist.* v. *Schempp,* 374 U. S. 203, 222 established a new and less stringent test of constitutionality. "The test may be stated as follows: what are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution. That is to say that to withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion."

The *Schempp* case however dealt with religious exercises in public schools and not with the use of public funds to aid religious institutions. We find nothing in the *Schempp* opinion which indicates any intention to weaken the established principle that public funds cannot be used to assist a religious institution. Frequent quotations from the *Everson* case are an indication quite to the contrary. In fact the *Everson* case is cited with approval several times and is relied on as authority for the *Schempp* test.

The argument that *Schempp* set up a new test was rejected by the Maryland Court of Appeals in *Horace Mann League* v. *Board,* 242 Md. 645, 669. The court said "We do not read it [ *Schempp* ] as establishing a completely new test, nor one that can be applied in all cases as a final and determinative one. *Schempp* did not involve a direct expenditure nor a direct grant of money. We read the test therein mentioned as being sufficient to decide the issues there involved, and, as the factual situation showed that the statutes could not even pass the test named, no more was needed to be said or added thereto."

We conclude that *Schempp* reaffirms the previously established tests with respect to public aid to religious institutions. Under these tests we hold that the statute under consideration is unconstitutional. You are advised therefore that with respect to parochial and other religiously oriented schools the answer to question three is in the affirmative.

Since parochial and other religiously oriented schools appear

to predominate among the nonpublic schools which are sought to be aided by Laws 1967, chapter 421, the major part of the scheme cannot be carried into effect because of the constitutional prohibition. It is impossible for us to determine whether the Legislature would have enacted any part of the amendment if the whole or a major part of it could not be carried into effect. We therefore consider the whole amendment void. *Public Service Co.* v. *State,* 101 N. H. 154, 163; *Opinion of the Justices,* 106 N. H. 202, 207. We therefore find it unnecessary to reply to other questions contained in your resolution.

FRANK R. KENISON.
LAURENCE I. DUNCAN.
WILLIAM A. GRIMES.
ROBERT F. GRIFFITH.

October 6, 1967.

*To his Excellency the Governor and the Honorable Council:*

In my opinion the following answers should be made to the inquiries contained in your resolution adopted August 15, 1967 with reference to Laws 1967, 421:1 which pertain mainly "to the legality of payment to parochial and certain private schools of a proportionate share of sweepstakes proceeds" as provided by that law.

Your first question reads as follows: "Does Part II, Article 83 of the New Hampshire Constitution, which provides, in part, that . . . 'no money raised by taxation shall ever be granted or applied for the use of the schools or institutions of any religious sect or denomination . . . ' prohibit the use of sweepstakes money as provided by Laws 1967, Chapter 421"?

It is well established that under our Constitution expenditures of public funds can be made for public purposes only. *Opinion of the Justices,* 106 N. H. 180, 183. No one can doubt that a program aimed at insuring an adequate education to all the elementary and secondary school pupils in our state is a matter of legitimate concern for the Legislature and that expenditures therefor would be for a public purpose. Schools are "means of protecting the State from the consequences of an ignorant and

incompetent citizenship." *Fogg* v. *Board of Education,* 76 N. H. 296, 299. The Legislature, and not the judiciary, is the arbiter of the wisdom, fairness or reasonableness of the means chosen to accomplish this purpose provided they do not violate some constitutional provision. *Coleman* v. *School District,* 87 N. H. 465, 472; *Monadnock School District* v. *Fitzwilliam,* 105 N. H. 487, 494; *Opinion of the Justices,* 99 N. H. 519, 523.

Laws 1967, *c.* 421 manifests a clear legislative intent that the balance of all moneys received from the sweepstakes after the payment of expenses was to be distributed "to the school districts of the State" and "to the chief administrative officer of non public schools" in accordance with a stated formula. These grants "shall be used for educational purposes and no part of said special fund shall be diverted . . . to any other purpose whatsoever." The preamble of the bill states that "parochial and certain private schools" in this state were to receive these grants. This declared purpose of the Legislature should be interpreted so as to render it constitutional if reasonably possible. *Leavitt* v. *Lovering,* 64 N. H. 607, 608; *Chronicle &c. Pub. Co.* v. *Attorney General,* 94 N. H. 148, 151.

From its origin in 1963 ( Laws 1963, *c.* 52 ) the proceeds from the sweepstakes have been referred to as "*funds*" ( RSA 284:21-f ) to be held "in a special *fund*" ( RSA 284:21-j ). ( Emphasis supplied ). It is also noteworthy that the sweepstakes law is part of RSA ch. 284 dealing with horse racing which provides in connection with the latter for a *tax* on contributions to pari-mutual pools in connection with running horse races or harness races. RSA 284:2, 23. Furthermore provision was made to pay "any tax levied against the proceeds" obtained from the sale of sweepstakes tickets. RSA 284:21-m. It would be strange to conceive of a tax levied on a tax even in today's tax conscious atmosphere.

All moneys collected by a state or municipality do not constitute a tax. A tax is a forced charge, imposition or contribution assessed upon persons, or property within the jurisdiction which is in no way dependent upon the will or contractual assent, expressed or implied of the person taxed. 51 Am. Jur., Taxation, *ss.* 3, 5, *pp.* 35, 36, 38. It is evident that the proceeds from the sale of sweepstakes do not come within this definition and were not intended by the Legislature to be a tax as evidenced by the

language used in the enactment of this law. *Frizzell* v. *Charlestown*, 107 N. H. 286, 288. It is my opinion that the sweepstakes funds are not "money raised by taxation" within the prohibition of Article 83, Part 2 of our Constitution. My answer to question No. 1 is "No" the above article does not "prohibit the use of sweepstakes moneys as provided by Laws 1967, Chapter 421."

No specific claim has been advanced that Laws 1967, *c.* 421 "conflict with or violate any other provision of the New Hampshire Constitution" and no such conflict or violation comes readily to mind. Under the circumstances my answer to question No. 2 is "No."

Question No. 3 reads: "If the answers to questions Nos. 1 and 2 are in the negative, are sweepstakes proceeds state or public funds which the First Amendment of the United States Constitution would prohibit from being distributed to parochial or private schools"?

I agree that sweepstakes proceeds can be considered state or public funds. *Ham* v. *Interstate Bridge Authority,* 92 N. H. 268, 270; *St. Regis Co.* v. *Board,* 92 N. H. 164, 166; *Droste* v. *Kerner,* 34 Ill. 2d 495, 503. I also agree that such funds cannot be used "to support religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion." *Everson* v. *Board of Education,* 330 U. S. 1, 16. However not every legislation which might entail some ultimate benefit to parochial or private schools is proscribed. *Everson* v. *Board of Education, supra,* 17; *Board of Education of Central Sch. Dist. No.* 1 v. *Allen,* 20 N. Y. 2d 109. "The test may be stated as follows: What are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution. That is to say that to withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion." *Abington School Dist.* v. *Schempp,* 374 U. S. 203, 222; *Everson* v. *Board of Education,* 330 U. S. 1; *McGowan* v. *Maryland,* 366 U. S. 420, 442.

It has long been established that parents may, in the discharge of their duty under state compulsory education laws, send their children to a religious rather than a public school if the school meets the secular educational requirements which the State has

power to impose. *Pierce* v. *Society of Sisters,* 268 U. S. 510. There is no contention that the parochial schools do not meet these requirements. The primary purpose of Laws 1967, *c.* 421 in my opinion is the public purpose of insuring an adequate secular education to all school children within the act regardless of their religious affiliation. I find nothing in the decisions from *Everson,* 330 U. S. 1, to *Schempp,* 374 U. S. 203, which provides that State aid to education can be distributed only under circumstances where not even any incidental aid to religion may occur. On the contrary it is evident in *Schempp* that if legislation satisfies a public purpose then any aid to religion must be substantial and directly intended before it may be held unconstitutional. *Abington School Dist.* v. *Schempp, supra,* 222.

It is my opinion that the purpose and primary effect of Laws 1967, *c.* 421 is not the promotion or advancement of a, or any, religion but the secular public purpose of assuring an adequate secular education to all the elementary and secondary school children of New Hampshire. I am also of the opinion that the provision in the statute that "such grants shall be used for educational purposes and no part of said special fund shall be diverted . . . to any other purpose whatsoever" can and should be interpreted to limit their use to constitutional purposes. *Opinion of the Justices,* 99 N. H. 519. Suitable administrative procedures can be evolved to insure that these grants are used for secular education and not for sectarian or religious instruction.

My answer to question No. 3 is "No" the First Amendment of the United States Constitution ( as well as the Fourteenth Amendment ) does not prohibit sweepstakes proceeds from being distributed to parochial or private schools.

In view of the opinion of the majority of the court it would serve no useful purpose for me to answer your remaining questions.

EDWARD J. LAMPRON.

*Winthrop Wadleigh* and associate counsel for National Council of Churches of Christ, American Jewish Congress and American Civil Liberties Union, for affirmative answers.

*Warren E. Waters* and associate counsel for Protestants and

Other Americans United for Separation of Church and State, for affirmative answers.

*Mr. William M. Smith* of Hanover also for affirmative answers.

*Burns, Bryant, Hinchey & Nadeau* and *Maurice A. Broderick* and associate counsel for Roman Catholic Bishop of Manchester and United States Catholic Conference, for negative answers.