

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

May 18, 1971

*See H-LA-47*

Honorable G. F. Mutscher
Speaker, House of Representatives
Capitol Building
Austin, Texas 78711

Opinion No. M-861

Re: Constitutionality of
Senate Bill 56 authorizing
tuition equalization grants
to students of approved
private colleges and uni-
versities in Texas.

Dear Mr. Mutscher:

We have received your request for an opinion of this office as follows:

"Your attention is called to Senate Bill #56, copy enclosed, which is presently being considered by the House of Representatives. Your opinion is respectfully requested as to whether the bill if enacted would in any respect violate the Texas Constitution, and most specifically, whether it would violate Article III, Section 51, or Article I, Section 7, of the Texas Constitution."

The question for resolution is presented in Section 1 of the proposed bill which reads:

"Section 1. In order to provide the maximum possible utilization of existing educational re-sources and facilities within this State, both public and private, the Coordinating Board, Texas College and University System, is authorized to provide tuition equalization grants to Texas residents enrolled in any approved private Texas college or university, based on student financial need."

-4179-

It is the opinion of this office that Senate Bill #56 does not violate either Article I, Section 7, or Article III, Section 51, or other parts of the Texas Constitution.

Article I, Section 7, Texas Constitution, reads as follows:

"No money shall be appropriated, or drawn from the Treasury for the benefit of any sect, or religious society, theological or religious seminary; nor shall property belonging to the State be appropriated for any such purposes."

Article III, Section 51, reads, in its pertinent part, as follows:

"The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporation whatsoever; . . ."

The questions presented by Senate Bill #56, and your letter were passed on by this office in Opinion No. M-391 while considering Senate Bills 631 and 485 in 1969. Such opinion determined that the Senate Bills considered did not violate Article I, Section 7, Article III, Section 51, or Article XVI, Section 6, of the Texas Constitution.

The problem of separation of Church and State has been frequently discussed, and is presently before the United States Supreme Court in the cases Tilton v. Richardson, Lemon v. Kurtzman, and DiCenso v. Robinson. This opinion, of course, is subject to the final outcome of these cases.

In the case Board of Education v. Allen, 392 U.S. 236, the United States Supreme Court reviewed a New York law requiring local public school authorities to loan textbooks, free of charge, to all students, grades seven through twelve, including those in private schools. The Court upheld the New York law stating:

"Everson[1] and later cases have shown that the line between state neutrality to religion and state support of religion is not easy to locate. The constitutional standard is the separation of Church

[1]Everson v. Board of Education, 374 U.S. 1 (1947)                -4180-

and State. The problem, like many constitutional problems in constitutional law, is one of degree."

The Court then set out a test to measure the degree declaring:

"The test may be stated as follows: what are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution. That is to say that to withstand the strictures of the Establishment Clause there must be <u>a secular legislative purpose and a primary effect that neither</u> advances nor inhibits religion." (Emphasis added.)

The primary purpose of Senate Bill 56, as set out in Section 1, is to serve a State or public purpose by " . . . utilization of <u>existing</u> educational resources and facilities within this State, . . ." (Emphasis added.) with all the financial benefits to be derived therefrom. The tuition aid is provided to individuals, so the benefit to a particular religion is "indirect" and "remote" as opposed to "primary".

There can be no doubt that it is in the public interest to provide for the education of the student citizens of this State. The subject has been foremost in the minds of our citizens since prior to the Texas Declaration of Independence from Mexico, and exists today in our Texas Constitution. Article VIII, Sections 1 and 10.

It is submitted that Senate Bill #56 meets the Supreme Court's test of having " . . . a secular legislative purpose and a <u>primary</u> effect that neither advances nor inhibits religion." (Emphasis added.)

Courts in other states have followed the reasoning of the Supreme Court of Kentucky in <u>Kentucky Building Commission v. Effron</u>, 310 Ky. 355, 220 S.W.2d 836 (1949) wherein the Court announced:

"It is well settled that a private agency may
be utilized as the pipe-line through which a public
expenditure is made, the test being not who receives
the money, but the character of the use for which
it is expended." (Emphasis added.)

See also: In re Opinion of the Justices, 113 A. 2d 114 (Supreme
Court, New Hampshire, 1955); Craig v. Mercy Hospital-Street
Memorial, 209 Miss. 427, 45 So. 2d. 809 (1950); Legat v. Adorno,
138 Conn. 134, 83 A. 2d. 185 (1951); Roe v. Kervich, 42 N.J. 191,
199 A. 2d 834 (1964); and Attorney General Opinions C-644 and C-
719 which approved contracts and tuition payments with religious
institutions under the theory above stated.

Further, "It is plain that an expenditure is not neces-
sarily barred because individuals as such may profit . . .", 51
Am.Jur. 281 Taxation, Sec. 330, et seq. and authorities cited
therein. See also Attorney General Opinions C-474, C-719 and
M-391. In Attorney General Opinion V-1067 (1950) we stated, in
part, as follows:

"In determining whether an expenditure of
public moneys constitutes a gift or a grant of
public moneys, 'the primary question is whether
the funds are used for a "public" or "private"
purpose. The benefits of the State from an ex-
penditure for a "public purpose" is in the nature
of consideration and the funds expended and there-
fore not a gift even though private persons are
benefited therefrom.'"

It is a legislative function to determine what consti-
tutes a "public purpose" and will not be reversed by the courts
unless manifestly arbitrary and incorrect. State ex rel. McClure
v. Hagerman, 155 Ohio St. 320, 98 N.E.2d 835 (1951). Where a low
rent housing project was objected to as being a prohibited gift
to individuals, our Supreme Court in Housing Authority of City of
Dallas v. Higginbothom, 135 Tex. 158, 143 S.W.2d 79 (1950) held
that the Legislative Declaration of the purpose of the legislation
must be given weight by the Courts.

It is therefore our opinion that Senate Bill #56 declares a secular legislative or public purpose and is not violative of the Constitution of the State of Texas.

Our only reservation concerning Senate Bill No. 56 is that, if passed, the Coordinating Board, under Section 6, should make sufficient regulations to prevent forced religious courses or activity on the recipients of the funds by the schools attended. Horace Mann League of U.S. v. Bd. Public Wks., 220 A2d 51 (Md.1966).

## S U M M A R Y

Senate Bill No. 56, providing for tuition equalization grants, states a primary purpose to provide the maximum possible use of existing resources and facilities in this State and therefore does not violate the separation of church and state doctrine of Article I, Section 7 or the prohibition of grants of public funds to individuals of Article III, Section 51 of the Texas Constitution.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Melvin E. Corley
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Rex White, Jr.
J. C. Davis
Jack Goodman
Bob Flowers

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant

(M-861)