Request of the Senate
No. 92-202

OPINION OF THE JUSTICES
(Misdemeanor Trial *De Novo*)

May 6, 1992

The following Resolution No. 4, requesting an opinion of the justices, was adopted by the senate on April 7, 1992, and filed with the supreme court on April 9, 1992:

"Whereas, there is pending in the Senate, House Bill 677-FN, 'An Act establishing a 2-year pilot program in Rockingham county eliminating the trial de novo system in misdemeanor cases,' as amended by the House of Representatives; and

"Whereas, HB 677-FN eliminates the trial de no~ superior court and provides for an appeal on^ for defendants in misdemeanor cases w^ in the district courts in only on^ temporary 2-year period: ~

"Whereas, und^ juries in d^ riod ~

^pe-
a tempo-
ne same class of
_ampshire, deprive the
_gnam county whose cases are
_ period of equal protection of the
_ r and 12 of the New Hampshire Constitu-
_ess to the courts under Part I, Article 14 of the
_ire Constitution?

_oes temporarily eliminating the option for a trial de novo appeal to superior court for certain defendants in district courts in Rockingham county deprive these defendants of due process of law or equal protection of the laws under the Fourteenth Amendment to the United States Constitution?

"That the senate clerk transmit copies of this resolution and HB 677-FN as amended by the House of Representatives to the Justices of the New Hampshire Supreme Court."

The following response is respectfully returned:

*To the Honorable Senate:*

The undersigned justices of the supreme court now submit the following replies to your questions of April 7, 1992. Following our receipt of your resolution on April 9, 1992, we invited interested parties to file memoranda with the court on or before April 28, 1992.

House Bill 677-FN (the bill) establishes a pilot program in Rockingham County designed to remedy a perceived problem in the management of misdemeanor cases. Currently, district courts have original jurisdiction of misdemeanor cases, *cf.* RSA 502-A:11 (district courts have original jurisdiction of crimes and offenses punishable by fine not exceeding $1,000 and imprisonment not exceeding one year); RSA 625:9, IV ("misdemeanor" is, *inter alia*, any crime for which maximum penalty is imprisonment of one year); RSA 651:2, II(c) (sentence for misdemeanor cannot exceed one year); RSA 651:2, IV(a) (Supp. 1991) (fine for misdemeanor cannot exceed $2,000), but a defendant convicted in district court has the right to a trial *de novo* in superior court, *see* RSA 599:1 (Supp. 1991) (defendants convicted in district court may appeal to superior court); *State v. Lambert*, 125 N.H. 442, 444, 480 A.2d 205, 206 (1984) (RSA 599:1 provides defendants convicted in district court with right to trial *de novo* in superior court). The bill eliminates this right, and in its place grants misdemeanor defendants the right to a jury trial in district court and the right to appeal issues of law directly to this court. Supporters of the bill believe the program will save both time and money. *See* N.H.H.R. RECORD, Vol. 14, No. 9, at 329 (1992) (remarks of Rep. Donnalee M. Lozeau); N.H.H.R. RECORD, Vol. 14, No. 23, at 617 (1992) (remarks of Rep. Stacey W. Cole). Moreover, a report favored by the supporters asserts that by concentrating "the more serious and complex matters in superior court," the program will better allocate responsibility between district and superior court. N.H. Supreme Court Long-Range Planning Task Force, AS NEW HAMPSHIRE APPROACHES THE TWENTY-FIRST CENTURY 13 (1990); *see also* N.H.H.R. JOUR. 227 (1991) ("The Task Force to Study the Elimination of the Trial De Novo System plans to come in this summer with an omnibus bill implementing the Supreme Court's long-range report on the court in the 21st Century.").

The bill provides:

"1 Pilot Program; Elimination of Trial De Novo in Superior Courts; Rockingham County.

I. Notwithstanding RSA 502-A, RSA 599, or any other provision of law to the contrary, the supreme court is directed to establish a 2-year pilot program eliminating the trial de novo system in misdemeanor cases in Rockingham county.

II. For purposes of this pilot program, the district courts in Rockingham county shall have original and exclusive jurisdiction over any crime or offense which is punishable by a fine of not more than $2,000 and imprisonment not exceeding one year. For the purposes of this pilot program only and notwithstanding the provisions of RSA 502-A:1, the supreme court shall divide Rockingham county into 3 judicial districts for which jury trials may be conducted at the current locations for the Salem district court, the Portsmouth district court, and the Rockingham superior court.

III. At the time of his arraignment in a district court in Rockingham county or, at the discretion of the court, for up to 20 days after the date of his arraignment, the defendant shall have an option of electing a jury trial or a non-jury trial. A non-jury trial shall be held in the district court where the complaint was filed. If the defendant chooses a jury trial, the case shall be heard in the judicial district designated by the supreme court to be served by the Rockingham superior court, the Salem district court, or the Portsmouth district court for trial by jury. Appeal of a decision on a misdemeanor case heard in Rockingham county shall be directly to the supreme court on issues of law only.

IV. The pilot program shall take effect on July 1, 1992, and shall continue for 2 years. The end result of this pilot program shall be as outlined in paragraph II; however, the method and dispatch with which it is implemented is within the discretion of the supreme court. On or before September 1, 1994, the supreme court shall submit a report, including any recommendations for continuation or expansion of the pilot program, to the speaker of the house, the senate president and the governor.

2 Effective Date. This act shall take effect July 1, 1992."

Question one first asks whether the bill violates the equal protection rights of Rockingham County misdemeanor defendants guaranteed by the New Hampshire Constitution. *See* N.H. CONST. pt. I,

arts. 1, 2, 12. Question two asks the same question, but in terms of the United States Constitution. *See* U.S. CONST. amend. XIV, § 1. Where an equal protection analysis requires merely a "rational relation" review, the State and Federal Constitutions offer similar protections. *See State v. LaPorte*, 134 N.H. 73, 76–78, 587 A.2d 1237, 1239–40 (1991) (examining statute under rational relation review and making no distinction between State and Federal Constitutions). Consequently, if we find that the bill need only survive the rational relation test, we can dispense with two separate State and federal equal protection analyses, and perform just one.

 Rational relation review is appropriate where "the classification [created by a statute or bill] does not affect a fundamental right or classify on the basis of race, creed, color, gender, national origin, or legitimacy." *State v. LaPorte*, 134 N.H. at 76, 587 A.2d at 1239. The bill's geographical classification suggests none of the enumerated "suspect classifications" and its elimination of the trial *de novo* prerogative affects no fundamental right. Neither the State nor the Federal Constitution guarantees a defendant the privilege of two trials.

██ Moreover, the bill leaves the right to a jury trial intact. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV, § 1. While it controls the timing and location of the trial, it does not limit the right itself. *Cf. Capital Traction Co. v. Hof*, 174 U.S. 1, 23 (1899) (Seventh amendment "does not prescribe at what stage of an action a trial by jury must, if demanded, be had; or what conditions may be imposed upon the demand of such a trial, consistently with preserving the right to it."). By its very terms, the bill ensures that each defendant retains the right to a jury trial. This right does not include the option to specify where and when the right will be executed. Consequently, we conclude that the bill need only be examined under the rational relation test, *see Firelock Inc. v. District Court*, 776 P.2d 1090, 1098 (Colo. 1989), and therefore conduct a joint State and federal equal protection analysis.

 Under the rational relation test, "'legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.'" *State v. LaPorte*, 134 N.H. at 76, 587 A.2d at 1239 (quoting *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985)). The legitimate State interest here is reducing State expenditures and delivering

justice more efficiently. The classification drawn by the bill, between Rockingham County defendants and defendants in the other nine counties, results from the legislature's decision to test the efficacy of the new system in one county before mandating this new system throughout the State. In other words, the pilot program is specifically created to determine whether the elimination of the trial *de novo* system will actually reduce State expenditures and deliver justice more efficiently as intended. The classification created by the program is thus perforce rationally related to a legitimate State interest.

Other courts have reached the same conclusion. *See Kimbrough v. Holiday Inn,* 478 F. Supp. 566, 575 (E.D. Pa. 1979) ("Reform can proceed one stage at a time."); *Firelock Inc. v. District Court,* 776 P.2d at 1098 (conducting pilot mandatory arbitration program in only one part of state does not violate equal protection). Even where no pilot program is used to justify a territorial discrepancy in the administration of justice, courts have often upheld intra-state differences if persons within each territory were treated alike and constitutional protections were not otherwise abridged. *See North v. Russell,* 427 U.S. 328, 338–39 (1976) (population and area factors may alone justify territorial classifications within state court system); *Mallett v. North Carolina,* 181 U.S. 589, 597–99 (1901) (no denial of equal protection where State is allowed appeal from superior court ruling in one part of state, but not another); *Washabaugh v. Washabaugh,* 285 Md. 393, 407, 404 A.2d 1027, 1035 (1979) (there is "no constitutional limitation per se upon territorial differentiations in judicial organization or procedures").

> "[The fourteenth amendment] contemplates persons and classes of persons. It has not respect [*sic*] to local and municipal regulations that do not injuriously affect or discriminate between persons or classes of persons within the places or municipalities for which such regulations are made. ... [A state] may establish . . . one system for one portion of its territory and another system for another portion."

*Missouri v. Lewis,* 101 U.S. 22, 30–31 (1879). We conclude that the bill does not violate equal protection and thus answer the first part of question one and the second part of question two in the negative.

■ Question one of the Senate request also asks whether the bill violates a Rockingham County misdemeanor defendant's right of equal access to courts, as guaranteed by part I, article 14 of the New

Hampshire Constitution. We find that it does not. Part I, article 14 reads:

> "Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

The first portion of the article relates to civil litigation and thus is inapplicable here. The portions concerning prompt and free trials likewise do not apply, as the bill affords Rockingham County misdemeanor defendants the right to a jury trial in the first instance with no price tag attached. *State v. Cushing,* 119 N.H. 147, 148, 399 A.2d 297, 298 (1979). Similarly, the bill provides no indication that justice will be anything but "complete [ ], and without any denial." Finally, as "conformably to the laws" means in accordance with the rules of statutory and common law, *cf. Sousa v. State,* 115 N.H. 340, 343, 341 A.2d 282, 284 (1975) (civil suits), it simply refers back to the bill at issue here.

In *State v. Basinow,* 117 N.H. 176, 177, 371 A.2d 458, 459 (1977), we said:

> "Although historical research has disclosed no fixed meaning for the provision as a whole, [part I, article 14] is basically an equal protection clause in that it implies that all litigants similarly situated may appeal to the courts both for relief or defense under like conditions and with like protection and without discrimination."

(Citation and quotations omitted.) To the extent that article 14 is viewed as an equal protection clause, an analysis here would simply duplicate the one performed above under part I, articles 1, 2, and 12 and under the fourteenth amendment. We therefore find that the bill does not violate article 14, and answer the second part of question one in the negative.

We now address the first part of question two, asking whether the bill violates the due process clause of the United States Constitution. *See* U.S. CONST. amend. XIV, § 1. We again answer in the negative. The fourteenth amendment declares that no state shall "deprive any person of life, liberty, or property, without due process of law." By its terms, the amendment guarantees due process only when deprivation of life, liberty, or property is threatened. The bill obviously

threatens neither a defendant's life nor his or her property, and thus we confine our analysis to the question of liberty.

First, we note that, in the nature of all criminal proceedings, a defendant's liberty may ultimately be lost following a proceeding conducted pursuant to the bill. However, the question is not whether a defendant's liberty might be jeopardized under the pilot program, but whether the bill deprives a defendant of liberty *without due process*. Because the bill gives defendants the option of a full jury trial and the right to appeal a conviction to this court on issues of law, we find that the proposed legislation provides defendants all the process they are due. *See State v. Laaman*, 114 N.H. 794, 798, 331 A.2d 354, 357 (1974) (due process requires that accused receive a trial by fair and impartial jury), *cert. denied*, 423 U.S. 854 (1975). As long as a district court jury trial affords protections equivalent to those supplied by a trial conducted in superior court, defendants cannot successfully argue that they are deprived of due process simply because their cases are handled by one court, and not the other.

In conclusion, we answer all parts of questions one and two in the negative. We note, however, that "since requests for our advisory opinions come to us with no record beyond the assumptions stated in the requests themselves," *Opinion of the Justices*, 132 N.H. 777, 783, 584 A.2d 1342, 1346 (1990), we "cannot guarantee that we have been able to address every possible issue that may be raised," *Opinion of the Justices*, 128 N.H. 14, 17, 509 A.2d 744, 746 (1986). "[I]t is impossible to anticipate the myriad fact patterns which may arise and test the limits of [the bill]." *Opinion of the Justices*, 134 N.H. 266, 279, 592 A.2d 180, 188 (1991).

DAVID A. BROCK
WILLIAM F. BATCHELDER
WILLIAM R. JOHNSON
W. STEPHEN THAYER, III
SHERMAN D. HORTON, JR.

May 6, 1992

*Representative Robert E. Murphy*, of Manchester, *pro se*, filed a memorandum in support of negative answers to the questions presented.