Request of the Senate
No. 92-236

## OPINION OF THE JUSTICES
## (Choice in Education)

November 18, 1992

The following response is respectfully returned:

*To the Honorable Senate:*

The undersigned justices of the supreme court now submit the following replies to your questions of April 21, 1992, which we received on April 30, 1992. On May 6, 1992, the court respectfully requested to be excused from the duty to return answers because the time remaining before the anticipated termination of the General Court's then current session was insufficient to permit adequate consideration of the questions and to allow interested persons to file memoranda. By letter dated May 18, 1992, and filed with the supreme court on May 20, 1992, the president of the senate informed the court that the senate had voted to keep this bill on the table and had adjourned to the call of the chair; therefore, the president renewed the request that the court answer the senate's questions. We then invited interested parties to file memoranda with the court until June 22, 1992.

SB 419-FN, according to its terms, seeks to establish a "parental choice in education program," whereby a parent or guardian of a student in an elementary or secondary school in New Hampshire who is "disatisfied [*sic*] with the instruction" at the student's current school could elect for the student to attend any other state approved school. The school district in which the student is a resident would be responsible for payment of a portion of the tuition at the new school, not to exceed seventy-five percent of the tuition paid for the student in the resident district.

The senate's first question asks us whether the proposed legislation's inclusion of sectarian schools as recipients of the payments from the resident districts violates part I, article 6 of the New Hampshire Constitution, which provides that "no person shall ever

be compelled to pay towards the support of the schools of any sect or denomination."

█ The New Hampshire Constitution recognizes "a natural and unalienable right to worship God according to the dictates of [one's] own conscience." N.H. CONST. pt. I, art. 5. Our constitution, however, also recognizes the fundamental separation between church and state. In its first reported case, this court noted that:

> "[Our constitution] wholly detaches religion, as such, from the civil State. By the mixture of civil and spiritual powers, both become polluted. The civil uses religion for an engine of State to support tyranny, and the spiritual becomes invested with the sword of the civil magistrate to persecute. Under our Constitution there is no such union, no such mixture."

*Muzzy v. Wilkins*, Smith (N.H.) 1, 9 (1803) (citation omitted).

Under the proposed legislation, students may attend "any state approved school," including sectarian schools. Triggered only by a "parent or guardian who is disatisfied [*sic*] with the instruction at the child's present school," the student's resident district would be required to pay up to seventy-five percent of the resident sending school's tuition to the alternative school chosen by the parent or guardian. We do not discern from material submitted whether the seventy-five percent is related to the per pupil cost of education in the resident sending district or if, in fact, the seventy-five percent is related to the resident district's actual tuition charges assuming it receives such from non-district students. The narrow distinction between per pupil cost on the one hand and tuition on the other is not a matter that precludes our answering the fundamental constitutional question presented.

█ No safeguards exist to prevent the application of public funds to sectarian uses. *See Opinion of the Justices*, 109 N.H. 578, 258 A.2d 343 (1969); *Opinion of the Justices*, 99 N.H. 519, 522, 113 A.2d 114, 116 (1955). The resident sending district's payments would constitute an unrestricted application of public money to sectarian schools. We find, therefore, that the proposed legislation violates the plain meaning of part I, article 6 and, consequently, we answer the first question in the affirmative. "We note, however, that since requests for our advisory opinions come to us with no record beyond the assumptions stated in the requests themselves, we cannot guarantee that we have been able to address every possible issue that may be

raised." *Opinion of the Justices (Misdemeanor Trial De Novo)*, 135 N.H. 549, 556, 608 A.2d 874, 879 (1992) (citations and quotations omitted).

Because our answer to the first question eliminates sectarian schools, a class appearing to predominate among the nonpublic schools, from the parental choice program, we cannot determine whether the legislature would have continued interest in the legislation if this group were excluded from the program. Consequently, we respectfully request that we be excused from the duty to return an answer to your second question. *See Opinion of the Justices*, 108 N.H. 268, 274–75, 233 A.2d 832, 836–37 (1967) (finding it unnecessary to reply to other questions where it was impossible to determine whether legislature would have enacted amendment if part of it could not be carried into effect).

DAVID A. BROCK
WILLIAM F. BATCHELDER
WILLIAM R. JOHNSON
W. STEPHEN THAYER, III
SHERMAN D. HORTON, JR.

November 18, 1992

*New Hampshire School Boards Association (Theodore E. Comstock* on the memorandum), filed a memorandum in support of affirmative answers to the questions presented.

*New Hampshire Chapter of the National Education Association (Steven R. Sacks* on the memorandum), filed a memorandum in support of affirmative answers to the questions presented.

*New Hampshire Civil Liberties Union (Jon Meyer*, cooperating attorney, on the memorandum), filed a memorandum in support of affirmative answers to the questions presented.