*J. Q. Charles* and *E. L. Johnson*, for defendant in error.
*Thos. George*, for plaintiff in error.

---

THE UNION COLONY *et al. v.* HON. VICTOR A. ELLIOTT, JUDGE DISTRICT COURT, SECOND JUDICIAL DISTRICT.

(*Supreme Court of Colorado, December Term, 1880—on Petition of Mandamus.*

MANDAMUS. DOES NOT LIE TO CONTROL THE DISCRETION OF A COURT OR JUDGE. The proper function of the writ of mandamus is merely to set in motion. It will, in a proper case, be allowed to command action, but never to control discretion—unless it be made to appear that there has been an abuse of discretion, or that it has not been exercised in accordance with law.

To AUTHORIZE THE WRIT, it must be made to appear, either that the judge or court has refused to proceed to the discharge of a duty imposed by law, or that the action taken is such a clear abuse of discretion, and violation of the spirit and intent of the statue as to amount to a refusal to proceed, and a denial of justice.

THE IRRIGATION ACT OF COLORADO. ADJUDICATION OF RIGHTS UNDER. The water rights under the irrigation act, are rights of property, and the judges of the district courts are charged by the act with the duty of adjudicating upon and entering up decrees, settling and determining the rights of claimants—no provisions being made in the act for suits upon the dockets of the courts, for parties thereto, or for personal service of process upon interested parties to be affected by the decrees—it is not an abuse of discretion to require in the rules prescribed by the district judge, that the questions at issue be raised by pleadings in court, and that the parties interested be summoned as in the trial of other issues.

BECK, J. The petition for the awarding of the writ of mandamus in this case sets out that the petitioners are corporators, doing business in Weld county, and that they are owners of and interested in ditches appropriating water from the Cache La Poudre river, in water district No. 3. It states that a referee was

appointed to take testimony in said water district, under the provisions of the irrigation act of February 19, 1879; that due notice was given, and the testimony of all persons attending was taken as required by the act, and duly returned by the referee; that thereafter two several applications were made to the Hon. Victor A. Elliott, judge of the second judicial district of the state within which said county and water district are situated, to make necessary orders and rules for carrying out the intent of the act, and for a hearing and decree under its provisions. The petition also sets out the rules made by the judge in the premises, and avers that the intent of the act cannot be carried out under the rules so made, and that they require pleadings and actions not contemplated by the act, and that they are without authority of law and are in contravention of the spirit and meaning of the statute. The prayer of the petition is, that a writ of mandamus issue to said judge, commanding him to make and promulgate such rules as to him may seem necessary and expedient for carrying out the intent of the act, etc.; also all orders and rules necessary and proper for the regulation of the hearing, adjudicating and settling of all questions concerning the priority of appropriation of water between ·ditch companies and other owners of ditches drawing water for irrigation purposes from the Cache La Poudre river, or its tributaries, within water district No. 3; for the giving of notice to all concerned of the time and place of hearing, that he appoint an early day for the hearing, and that on the day appointed he examine the testimony taken and reported by the referee, and upon it enter a decree, determining the several priorities of the several ditches and reservoirs, concerning which testimony was offered before the referee, with the amount of water each shall be held to have appropriated.

To this petition a demurrer has been interposed, questioning its sufficiency in law to authorize the relief prayed for. The rules and principles of law governing the exercise of jurisdiction by mandamus appear to be pretty well settled in the books, but much difficulty is frequently experienced in the application of these principles and rules to cases arising in the courts, wherein the exercise of this extraordinary jurisdiction is invoked. Perhaps this is more especially the case where the person against whom the writ is prayed is invested with the dis-

34

cretion as to the act or duty to be performed. Some of the general principles controlling the issuing of the writ and the jurisdiction by mandamus are, that if a judicial officer refuses to act in the performance of an official duty, the writ will issue to compel action and the exercise of official discretion or judgment, but the mandate will contain no direction as to the manner in which the duty shall be performed. The proper function of the writ is merely to set in motion. It will, therefore, in a proper case, be allowed to command action, but never to control discretion. To warrant relief by this means the right must be clearly established, for the writ never issues in doubtful cases, nor where, if issued, it would prove unavailing. There must be no other adequate legal remedy, and in no case will it issue where it appears that the official discretion has been exercised, unless it be made to appear that there has been an abuse of the discretion, or that it has not been exercised in accordance with law. Nor will it lie in all cases for the cause that parties have no other legal remedy. (High on Ex. L. Rems., Secs. 5-24, and authorities there cited.) It has been further held that when subordinate courts have acted judicially upon matters properly presented, their decisions, whether right or wrong, cannot be altered or controlled by mandamus. *Ibid*, Section 156, and cases cited; *Ex parte* Hoyt, 13 Pet., 279.

We understand the petitioners and their counsel to be of opinion that the district judge, under an erroneous view of the statute, has prescribed rules in violation of its spirit and intent, and that his action in the premises is wholly outside his judicial discretion, and that these rules imposed conditions and hardships upon those desirious of having their rights adjudicated, not warranted by the statute. From this view of the case the inference is drawn that the discretion to make necessary rules and orders to govern proceedings under the act in question, has not been exercised at all, and that the neglect or refusal of the judge to adjudicate the rights of the petitioners, until the compliance on their part with the rules made, is tantamount to a refusal to act upon a preliminary objection, which is purely a matter of law, and as to which the judge has misconstrued the law.

It has been held that where a duty is enjoined to be performed with discretion, the discretion can not be exercised arbitrarily, but must be exercised for the public good; and that when a discretion is abused and made to work injustice, it is admissible that

it be controlled by mandamus. Tapping on Mandamus, p. 66 ; *Village of Glencoe* v. *The People*, 78 Illinois, 382.

It was held in *Castello* v. *St. Louis Circuit Court*, 28 Missouri, 259, that where an inferior judicial tribunal declines to hear a case upon what it terms a preliminary objection, and that objection is purely a matter of law, a mandamus will go if the inferior court has misconstrued the law. Several English authorities are cited in support of this principle, among them the case of the *King* v. *the Justices of the First Riding of Yorkshire*, 5 Barn. and Adol., 667.

Castello brought an action in the circuit court to contest his right to the office of sheriff of St. Louis county. The circuit court refused to try the case and struck it from the docket, on the ground that legal notice of the contest had not been given within the time prescribed by statute. In respect to the notice given, Justice Naption, in delivering the opinion of the court, says: "If the circuit court declined to go into the merits of the case because the party complaining had not given the notice required by the statute, that was a preliminary objection upon a point of law which this court can review upon a writ of mandamus; and if the circuit court called for a notice which the statute did not require, the mandamus ought to be made peremptory." But the court being satisfied of the insufficiency of the notice, and of the correctness of the ruling below, denied the writ. Justice Scott concurred in the conclusion, but denied the correctness of the reasoning. He held that it was the official duty of the judge to pass upon the sufficiency of the statutory notice required in such cases, and that it was wholly immaterial whether the court was wrong or right as to the point of law involved, for when it had proceeded so far as to determine that legal notice had not been given, the controversy was determined, and determined on its legal merits. The right of contest was upon condition that a prescribed notice be given within a certain time after the official count should be declared. If this notice had not been given it would be futile for the contestant to prove that he had received a majority of the votes cast at the election. The justice also denied the application to that case of the rule announced by the Court, to wit: That where a judicial tribunal declines to hear a case, upon a preliminary objection which is purely matter of law, a mandamus will go if that inferior tribunal has misconstrued the law. He held that the appropriate remedy, if any, in such case was by appeal

or writ of error, and if neither would lie it was because the statute made the action of the circuit court final. In support of his views Justice Scott referred to the case in 5 Barn. & Adol., *supra*, cited in the opinion of the court.

This was an appeal to the quarter sessions. The statute required ten days' notice prior to the next sessions, which was duly given. When the time arrived the appellant moved that the appeal be respited to the next quarter sessions, which was granted. When the appeal was called on, at the sessions to which it had been continued, appellant was called upon to prove his notice of appeal to the respited sessions. No such notice having been considered necessary, or given, this appeal was dismissed. Upon an application to the King's bench for a mandamus to compel the court of quarter sessions to reinstate and try the appeal, the writ was ordered to issue, on the ground that a notice of respited appeal was not required by any rule of law, or by any rule of practice, at the sessions, and that the court had no authority to exact it from the appellant. All the judges were agreed, that if the dismissal had been based upon the original notice of appeal, which was prescribed by statute, they would not interfere. This case appears to support the views of Justice Scott in respect to the distinction between points preliminary, so called, and likewise the distinction which the law makes in respect to the rulings thereon. Where the point involves a rule of law or rule of court, and likewise a question of fact which may go to the legal merits of the controversy, the decision is within the discretion of the court, and if erroneous cannot be controlled by mandamus. But it is otherwise if the court require an act to be done, or proof to be made, before proceeding to the merits, which is not required by any rule of law, practice or rule of court, and which imposes unnecessary hardships on a party. It is said in Tapping on Mandamus, page 158, that the court will, by mandamus, command all inferior jurisdictions to hear a case in the first instance, and will oblige them to do whatever is incidentally necessary to such hearing, but will not prescribe the mode of hearing and determination. It is further said that the court of King's bench will not interfere to regulate the practice of the inferior court, it being the sole judge of its own practice; but where the practice is contrary to law, the court will not sanction it, and therefore will award a mandamus.

In *ex parte* Whitney, 13 Pet., 404, it was alleged in the petition for a mandamus to the circuit court of the eastern district of Louisiana, in which the petitioner's bill in equity was then pending, "That it is understood to be the settled determination of the district judge not to suffer chancery practice to prevail in the circuit court; that her right to proceed in her suit has been denied until she shall cause copies of her bill in the French language to be served upon the defendants, or some of them, and until she shall file documents which are not made exhibits in the cause; and then that all further proceedings in the cause shall be in conformity with the existing practice of the court, which existing practice is understood to mean the practice prevailing in the court in civil cases generally, in disregard of the rules established by the Supreme Court to be observed in chancery cases." Judge Story, in denying the application, held that it was the duty of the circuit court to proceed in the suit according to the rules prescribed by the Supreme Court for proceedings in equity causes; and while the proceedings of the circuit court and the orders made in the cause were not in conformity with those rules and with the chancery practice, yet the question was not as to the regularity and propriety of those proceedings, but whether in that case a mandamus ought to issue. He concludes as follows: "And we are of opinion that it is not such a case. The district judge is proceeding in the cause, however irregular that proceeding may be deemed, and the appropriate redress, if any, is to be obtained by an appeal after the final decree shall be had in the cause. A writ of mandamus is not the appropriate remedy for any orders which may be made in a cause by the judge in the exercise of his authority, although they may seem to bear harshly and oppressively upon a party. The remedy in such case must be sought in some other form."

From a consideration of the foregoing and many other authorities, including the legislative act in question, we deduce as applicable to the present case, the following conclusions of law: The district judge being clothed by the statute with authority to make any and all orders and rules which may be necessary and expedient for carrying out the intent of the act, as well touching the proceeding in court as in respect to other matters specified, he is vested with a very broad discretion in the framing of such rules and orders. He is required to act judicially in the making of

these rules and orders, and his judgment and discretion alone are to be exercised in their creation. If he acts in good faith, and within the limits of the powers conferred, so that the purposes of the act can be executed under the rules made, his action, however irregular, erroneous or unwise, cannot be revised in this manner; and if he holds himself in readiness to proceed under the rules made, and execute the act, mandamus will not lie. To authorize the writ in such case, it must either be made to appear that the judge or court has refused to proceed under the law, or that the action taken is such a clear abuse of discretion and violation of the spirit and intent of the statute as to amount to a refusal to proceed, and a denial of justice.

I am aware that the counsel for petitioner contend that they have presented just such a case in their petition. This must be determined by a consideration of the statute, the acts to be performed by virtue of its provisions, the authority vested in the judge, both by the general law and the irrigation act, and the action taken by him, which is the subject matter of complaint.

The relief sought by this proceeding is to have this court, by its mandate to the district court, remove the obstructions complained of out of the way, and to command that court or judge to make other rules providing for an adjudication of the rights of all parties upon the testimony taken by the referee, without the institution of a suit or the formality of pleadings.

The statute known as the irrigation act of February 19, 1879, is, perhaps, one of the most important acts, embracing as it does one of the most difficult subjects of legislation. And when the novelty of the subject, the urgent necessities of the various claimants, and the total lack of precedent applicable to the conditions of soil, climate and the varying supply of water in the agricultural districts, are all considered, it is not to be wondered at that the law is not more complete and perfect in its various provisions. It is probably a step in the right direction, and a great advance on all previous enactments. Indeed, it is the first systematic attempt as yet made to determine and enforce the rights of all persons claiming water in the several natural streams formed by the melting snows of the mountains, and which with their tributaries are distributed amid and wend their sinuous ways through the arid lands of the state.

The act subdivides the principal agricultural portions of the state into ten irrigation districts; provides for the appointment of a water commissioner for each district, to divide the waters in the natural streams among the several ditches according to the rights of each, and giving to such commissioners police powers for the enforcement of such divisions. Provision is made for the appointment of referees in each water district, whose duties are, upon giving the notices prescribed in the act, to take the testimony of all persons or corporations interested, or claiming to be interested, in ditches and reservoirs, giving such persons the right to offer any and all proofs which they may deem advisable for their interests, and it is provided that those who neglect or refuse to appear before the referee and make proof of their claims, shall be forever barred from making any claim to priority against claimants who do appear and make proof of their claims, unless for good cause shown the judge of the district court shall permit them so to do. The act makes provision also for fixing the price of water to be sold from ditches and reservoirs to consumers, and likewise for a *pro rata* division of water among those entitled in times of scarcity; and exclusive jurisdiction is vested in the several district courts to adjudicate all rights of appropriation of water, and to pass upon all questions of law and questions of right growing out of, or in any way involved or connected with, the subject of water rights. The judges of these courts are empowered to make any and all orders and rules necessary and expedient to carry out the intent of the act, "as well touching the proceeding in court, as the act and doings of said referees, and also for the purpose of securing to any party feeling aggrieved by the acts of such referee, or the decree of the court, opportunity for redress." Provision is made for a review with additional testimony of any decree made under the act at any time within two years from the time of entering up the same, where it appears that the ends of justice will be thereby promoted, and it is specially enjoined, that "this act, in all courts, shall be liberally construed in favor of securing to all persons interested in any proceeding hereunder, the just determination of their rights."

The foregoing is the scope of the act and the substance of its provisions. The district courts, or the judges thereof, are required to adjudicate the rights of all persons and corporations

claiming to have made appropriations of water, and to enter up decrees settling and determining such rights and claims, but no provision is made for suits upon the dockets of the courts, or for parties thereto, nor for personal service of process upon owners of water rights, and persons whose titles to alleged appropriations are to be affected by such decrees. It appears to be the view of petitioners and their counsel that the spirit and intent of the act simply require a general notice to all concerned that the taking of testimony has been completed by the referee, and that on a certain day a decree will be entered thereon, settling the rights and titles of all claimants. If this be the correct view, such a proceeding would certainly be an anomaly in legal jurisprudence. By such a construction of the act, water rights in ditches and in the several natural streams which, it must be borne in mind, are rights of property, are to be adjucated, and the various claims thereto confirmed or divested, without a cause in court, without parties, without pleadings, and without an attempt to obtain personal service upon those whose property rights are to be affected, but solely upon such general notice, and upon a mass of testimony in the form of *ex parte* depositions, which were not taken in any litigated case. Would orders and rules requiring and sanctioning such extraordinary proceedings so widely variant from the usual course of proceedings in court, be a wise exercise of the liberal discretion vested by the legislature in the district judge? It must be remembered that these property rights in water are as important, as valuable and as extensive as the broad acres to be fertilized thereby, for without the one the other is almost valueless. It is in vain that the thirsty soil of our valleys and plains be tickled with plow or hoe; it will refuse to bring forth its fruits without the application and vitalizing influence of water. Suppose that proceedings of the character contended for were, under similar legislation, employed to settle all questions of title to the lands to be irrigated, would they not be considered of doubtful validity? And where titles should be diverted by such proceedings, might not some doubt be entertained whether the same was done by due process of law, within the meaning of the constitution? But if the validity of such proceedings be conceded, would not a court of general jurisdiction be justified in exercising the widest liberality of discretion in requiring parties whose rights were to be affected, to be regularly

brought into court previous to decree, even though the statute itself had failed to make such specific provision ?

Blackstone says that "a court is defined to be a place where justice is judicially administered.    *    *    *    In every court there must be at least three constituent parts—the *actor, reus* and *judex;* the *actor*, or plaintiff, who complains of an injury done; the *reus*, or defendant, who is called upon to make satisfaction for it ; and the *judex,* or judicial power, which is to examine the truth of the fact, to determine the law arising upon that fact, and if any injury appears to be done, to ascertain, and by its officers, to apply the remedy." (3 Bl. Com., 24-5.) Another author says : " No one can properly resort to a court of justice until his right is disputed; so there must be a complainant and some one to complain against." 1 Waits. Pr., 32.

While many of the provisions of this act are wise and salutary, the act bears internal evidence of hasty and ill-considered legislation. The machinery for adjudicating individual rights and titles is certainly imperfect and incomplete. It is true this whole subject of providing rules of proceeding and practice in the courts is committed to the wisdom and discretion of the district judges, and it is a redeeming feature of the statute that it was committed with the injunction that the act be construed liberally in favor of securing to all persons interested in any preceeding thereunder the just determination of their rights.

The burden of the complaint in the present petition is, that the judge of the second judicial district has been entirely too liberal, in this behalf, in his construction of the act, and that the rules which he has promulgated for carrying out the purposes of the act are in violation of its spirit and intent, and tend to defeat the purposes thereof.

Upon consideration of the whole case, it would appear that the main questions involved in this issue are not whether the act of the legislature will bear a different interpretation from that given it by Judge Elliott, or whether other and different rules of proceedings might not with propriety have been adopted, nor whether any rules are necessary to enable the court to enter up a decree upon the testimony taken and reported by the referee; but the questions are, Were the rules and orders complained of, made in the exercise of judicial discretion, and within the limits of the

35

powers conferred by the act and by law; and can the statute be executed under such rules and orders?

Upon careful consideration of the several provisions of the act in question, of the rules made by the district judge, the authority vested in courts of general jurisdiction to prescribe rules of practice incidental to the legal and proper exercise of such jurisdiction, mindful also of the established principles of law governing the exercise of the remedy by mandamus, above cited, we are of opinion that these rules and orders were made in the exercise of judicial discretion and by virtue of authority for that purpose delegated by the legislative assembly, that the purposes of the act may be carried out under them. It appearing also, that the judge is willing to proceed under the rules so made, to adjudge and decree the rights of all parties, whenever the required steps are taken to bring into court all whose rights are to be affected by such adjudications, it follows that there is not such a case presented by the petition as will warrant the issuance of the writ. The demurrer to the petition is sustained, and the petition dismissed.

The Chief Justice being absent, did not sit in this case.

*Haynes, Dunning & Haynes* and *Wells, Smith & Macon*, attorneys for petitioners.

*H. P. H. Bromwell* and *B. M. Hughes*, attorneys for respondent.