**FIRELOCK INCORPORATED, a Colorado corporation, Petitioner,**

v.

**The DISTRICT COURT IN AND FOR THE 20TH JUDICIAL DISTRICT OF the STATE OF COLORADO; The Honorable Richard C. McLean, District Judge; and McGhee Communications, Inc., Respondents.**

**No. 88SA262.**

Supreme Court of Colorado,
En Banc.

July 24, 1989.

Mosley, Wells, Johnson & Ruttum, P.C., Morris B. Hoffman, Denver, for petitioner.

Warren & Carlson, Richard N. Carlson, Niwot, for respondents.

Richard W. Laugesen, Denver, amicus curiae.

William P. DeMoulin and W. David Pantle, Denver, for amicus curiae Colo. Bar Ass'n.

ROVIRA, Justice.

This case requires us to determine whether the Colorado Mandatory Arbitration Act (Act), §§ 13–22–401 to 13–22–409, 6A C.R.S. (1987), violates the Colorado Constitution and the due process and equal protection clauses of the fourteenth amendment to the United States Constitution.

The Boulder County District Court held that the Act was constitutional and denied the petitioner's request to refrain from assigning the case for arbitration. We issued a rule to show cause pursuant to C.A.R. 21, and we now discharge the rule.

### I.

In 1988, McGhee Communications, Inc. (McGhee) commenced an action in the Boulder County District Court, which is located in the Twentieth Judicial District, against the petitioner, Firelock Incorporated (Firelock). McGhee claimed that it rendered advertising services to Firelock for which Firelock did not pay. In its complaint, McGhee certified that the probable recovery would not exceed $50,000, exclusive of interest and costs, and that the case was not exempt from mandatory arbitration. See C.R.C.P. 109.1.

Firelock filed an answer denying that the requested amount was owed, asserted several affirmative defenses, and demanded a jury trial. Firelock also filed a motion to refrain from assignment for mandatory arbitration under the Act. In support of its motion, Firelock claimed that the Act violated article II, sections 3, 6, 23, and 25; article III; article VI, sections 1 and 9; and article XVIII, section 3, of the Colorado Constitution; the fourteenth amendment to the United States Constitution; and C.R.C.P. 38. McGhee resisted the motion and requested that the trial court find the Act constitutional and order arbitration to be commenced promptly.

The trial court denied the motion, and Firelock then filed a petition pursuant to C.A.R. 21. In its petition, Firelock requested that this court issue an order to show cause why the respondent district court should not be restrained from referring the case for arbitration. Firelock also requested that we make the rule absolute and declare the Act unconstitutional.

### II.

The Act was approved on May 28, 1987, and became effective on January 1, 1988. The Act is scheduled to terminate on July 1, 1990. See § 13–22–402(1), 6A C.R.S. (1987). Beginning on January 1, 1989, and on each January 1 thereafter, the judicial department must submit to the General Assembly an annual report evaluating the mandatory arbitration pilot project. See § 13–22–408, 6A C.R.S. (1987).

The Act provides a framework of mandatory arbitration in eight pilot judicial districts of which the twentieth, where the Boulder District Court is located, is one. See § 13–22–402(1), 6A C.R.S. (1987). In these eight pilot districts, any civil action filed in any court of record except the county court and small claims court after January 1, 1988, and before July 1, 1990,

seeking money damages in the sum of $50,-000 or less, excluding costs and interest, is to be assigned to mandatory arbitration once the action is at issue. *See* § 13–22–402(2), 6A C.R.S. (1987).

Pursuant to the Act, the complaint and any applicable counterclaim or cross-claim governed by the Act must contain a certification that the probable amount of recovery exceeds or does not exceed $50,000, the limit imposed for mandatory arbitration. The Act establishes procedures for the selection and compensation of arbitrators, *see* § 13–22–403, and sets forth an outline of procedures for the arbitration hearing, *see* § 13–22–404. Arbitrators must be "qualified" and must file a consent to act as an arbitrator in the district in which the court is located, but an arbitrator need not be an attorney. *See* § 13–22–403(3). Section 13–22–405 provides for a trial de novo for any party dissatisfied with the decision of the arbitrators. The demand for a trial de novo must be filed with the court within thirty days after the filing of the arbitrators' decision. *See* § 13–22–405(1). The Act also provides that, unless the trial de novo results in "an improvement of the position of the demanding party by more than ten percent," the demanding party must pay the costs of the arbitration proceeding including arbitrator fees, but not exceeding $1,000. *See* § 13–22–405(3).

Section 13–22–406 provides that the supreme court, pursuant to its authority under article VI, section 21, of the Colorado Constitution, is empowered to promulgate rules governing the arbitration proceedings established in the Act. Pursuant to this authority, we adopted C.R.C.P. 109.1. C.R.C.P. 109.1 establishes the procedure for certification of the probable amount of recovery and the basis for any exemption from the Act, *see* C.R.C.P. 109.1(b), sets forth sanctions for failure to comply with the certification procedures, *see* C.R.C.P. 109.1(c), and provides for a detailed procedure for the selection of arbitrators, *see* C.R.C.P. 109.1(d). C.R.C.P. 109.1 also provides for the filing of a pre-arbitration "Disclosure Statement," *see* C.R.C.P. 109.-1(h), sets forth limited rules for discovery, *see* C.R.C.P. 109.1(i), and establishes the details of the arbitration hearing and the powers of the arbitrators, *see* C.R.C.P. 109.1(l). C.R.C.P. 109.1(q) provides that if neither party demands a trial de novo within thirty days after the filing of the arbitrators' award, then the award becomes final and the trial court must enter judgment on the award in accordance with C.R.C.P. 58(a).

## III.

On appeal, Firelock presents several reasons for finding that the Act is unconstitutional. Firelock argues that the Act violates article III and article VI, sections 1 and 9, of the Colorado Constitution, which provide for the separation of powers; article II, sections 3 and 6, of the Colorado Constitution, which provide for the right of access to courts; article II, section 23, of the Colorado Constitution and C.R.C.P. 38, which provide for the right to trial by jury; article II, section 25, of the Colorado Constitution and the equal protection and due process clauses of the United States Constitution; and article XVIII, section 3, of the Colorado Constitution, which provides the General Assembly with authority over consensual arbitration. We will address each of these arguments in turn.

## A.

Firelock asserts that the Act violates the separation of powers provision of the Colorado Constitution because section 13–22–402(2) requires "that the pilot district courts *must* refrain from exercising their general jurisdiction pending arbitration." Firelock also asserts that the Act "is an unconstitutional delegation of judicial power to unqualified private citizens" because it allows arbitration to be "conducted by persons who are not only not members of the judiciary, but indeed who do not even have to be licensed attorneys."

Article III of the Colorado Constitution provides:

The powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial; and no person or collection

of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.

"The fundamental meaning of the separation of powers doctrine is that the three branches of government are separate, coordinate, and equal." *Pena v. District Court,* 681 P.2d 953, 955–56 (Colo.1984). The purpose of article III is to prevent one branch of government from exercising any power that is constitutionally vested in another branch of government. *Van Kleek v. Ramer,* 62 Colo. 4, 156 P. 1108 (1916).

According to article VI, section 1, the judicial power of the state is vested

in a supreme court, district courts, a probate court in the city and county of Denver, a juvenile court in the city and county of Denver, county courts, and such other courts or judicial officers with jurisdiction inferior to the supreme court, as the general assembly may, from time to time establish.

With respect to the authority vested in district courts, article VI, section 9, states that "[t]he district courts shall be trial courts of record with general jurisdiction, and shall have original jurisdiction in all civil, probate, and criminal cases, except as otherwise provided herein."

We must decide, therefore, whether the General Assembly can constitutionally require a district court to refrain from exercising its original jurisdiction in some civil cases while arbitration is proceeding. To answer this question, we must examine the nature of the judicial function and determine whether the arbitration panels provided in the Act exercise judicial authority.

In *Mizar v. Jones,* 157 Colo. 535, 537, 403 P.2d 767, 769 (1965), we noted "that courts do exist primarily to afford a forum to settle litigable matters between disputing parties." A "court" consists of " 'persons officially assembled, under authority of law, at the appropriate time and place, for the administration of justice.' " *In re Allison,* 13 Colo. 525, 528, 22 P. 820, 821 (1889). In *Union Colony v. Elliott,* 5 Colo. 371,

381 (1880), we quoted Blackstone's definition of a court:

A court is defined to be a place where justice is judicially administered.... In every court there must be at least three constituent parts; the *actor, reus* and *judex;* the *actor* or plaintiff who complains of an injury done; the *reus* or defendant, who is called upon to make satisfaction for it; and the *judex* or judicial power which is to examine the truth of the fact, to determine the law arising upon that fact, and if any injury appears to be done, to ascertain, and by its officers to apply the remedy.

It is significant that, in Blackstone's definition of a court, a court must have the authority to apply the remedy.

Many courts have said that the essence of judicial power is the final authority to render and enforce a judgment or remedy. *E.g., Cedar Rapids Human Rights Comm'n v. Cedar Rapids Community School Dist.,* 222 N.W.2d 391, 396 (Iowa 1974); *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, 64 (1978); *Breimhorst v. Beckman,* 35 N.W.2d 719, 733 (Minn.1949). " 'It is not enough to make a function judicial that it requires discretion, deliberation, thought, and judgment. It must be the exercise of discretion and judgment within the subdivision of the sovereign power which belongs to the judiciary....' " *Solvuca v. Ryan & Reilly Co.,* 101 A. 710, 715 (Md.1917).

It is clear that, under the Act, the arbitrators' decision is not an exercise of the sovereign power of the state because the decision is non-binding, and the arbitrators do not perform a judicial function because they do not possess the final authority to render and enforce a judgment. *See Attorney General v. Johnson,* 385 A.2d at 65 (because either party can reject the decision of the arbitration panel and because the panel cannot enforce its decision even if the parties accept it, the panels do not exercise the judicial power of the state in the constitutional sense).

According to the Act, the arbitration panel must file its decision with the district court, and if neither party demands a trial

de novo within thirty days after the filing, only then will the decision be enforceable. Thus, neither party need be bound by the arbitrators' decision because either party can demand a full and complete trial on the facts and the law by the district court with no effect given to the arbitrators' decision. Furthermore, the district court, not the arbitration panel, enters the judgment in accordance with C.R.C.P. 58(a). ·See C.R.C.P. 109.1(q).

▮ Therefore, we conclude that the arbitration process created by the Act does not vest judicial authority in another branch of government in violation of article III of the Colorado Constitution because the arbitration panels do not perform "a judicial function." [1]

Firelock relies on *Wright v. Central Du Page Hospital Association,* 63 Ill.2d 313, 347 N.E.2d 736 (Ill.1976), where the Illinois Supreme Court struck down provisions relating to the establishment of medical review panels in medical malpractice cases. The Illinois statute provided for a three member arbitration panel consisting of one circuit judge, one practicing physician, and one practicing attorney. The circuit judge was to preside over the proceeding and decide procedural and evidentiary issues, but as to other issues, both legal and factual, the power and function of the lawyer and physician member of the panel were the same as that of the judge. The determinations of the panel were to be made in a written opinion stating its conclusions of fact and conclusions of law with a dissenting member filing a separate opinion. Either party could reject the panel's decision and proceed to trial as in any other civil case. The expenses of the panel were to be apportioned among the parties equally, except that a party who rejected a unanimous decision of the panel and who failed to prevail at trial could be taxed with the reasonable attorney's fees of the prevailing party, the costs of the panel, and the costs of the trial.

The Illinois Supreme Court held the statute to be unconstitutional because, among other things,

the physician and lawyer member of the medical review panel are empowered to make conclusions of law and fact "according to the applicable substantive law" over the dissent of the circuit judge. This, we hold, empowers the nonjudicial members of the medical review panel to exercise a judicial function in violation of [the Illinois] Constitution.

*Id.* 347 N.E.2d at 739–40 (citation omitted).

We find this case to be inapposite be· cause, here, the Act does not provide for a member of the judiciary in the arbitration panel with equal authority in the decision. Thus, there is no provision allowing two nonjudicial members of the panel to make conclusions of law and fact over the dissent of a member of the judiciary. Because the Act does not provide a mixed panel of judicial and nonjudicial members whereby the authority of the judiciary is diluted by the presence of laymen, we find *Wright* to be inapposite.[2]

### B.

Firelock claims that the Act unconstitutionally impedes the right of access to courts guaranteed by article II, sections 3 and 6, by forcing litigants to arbitrate their claims before access is given to the district

**1.** This conclusion is consistent with authority in other jurisdictions. *See, e.g., DiAntonio v. Northampton–Accomack Memorial Hosp.,* 628 F.2d 287, 292 (4th Cir.1980) (following Virginia law); *Keyes v. Humana Hosp. Alaska, Inc.,* 750 P.2d 343, 356–57 (Alaska 1988); *Eastin v. Broomfield,* 116 Ariz. 576, 570 P.2d 744, 750 (1977); *Lacy v. Green,* 428 A.2d 1171, 1178 (Del. Super.Ct.1981); *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, 64–65 (1978); *Prendergast v. Nelson,* 199 Neb. 97, 256 N.W.2d 657, 666–67 (1977); *State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434, 448–49 (1978).

**2.** In addressing the validity of arbitration statutes, many courts in other jurisdictions have found *Wright* to be unpersuasive. For example, in *Attorney General v. Johnson,* 385 A.2d at 66–67, the Maryland Court of Appeals stated that "[t]he court [in *Wright* ] said no more than that the application of principles of law is inherently a judicial function, and that the nonjudicial members of the panel were empowered to exercise it. We find that rationale, in view of all the considerations we have discussed above, singularly unpersuasive." (Citation omitted.)

court and by requiring a party who requests a trial de novo to pay the arbitration costs up to $1,000 if he does not improve his position by at least 10%.

Article II of the Colorado Constitution is entitled "Bill of Rights." Article II, section 3, provides that "[a]ll persons have certain natural, essential and inalienable rights," including, among others, the right of "enjoying and defending their lives and liberties." Section 6 of article II provides that: "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay."

Generally, a burden on a party's right of access to the courts will be upheld as long as it is reasonable. "In a proper case ... the right of free access to our courts must yield to the rights of others and the efficient administration of justice." *People v. Spencer*, 185 Colo. 377, 381–82, 524 P.2d 1084, 1086 (1974) (enjoining a *pro se* plaintiff who filed numerous unfounded lawsuits from proceeding *pro se* as plaintiff in the courts of this state); *accord Board of County Comm'rs v. Winslow*, 706 P.2d 792, 794–95 (Colo.1985) ("Forbidding a party from filing cases *pro se* does not infringe upon his constitutional right of access to the courts because he may still obtain access to judicial relief by employing an attorney authorized to practice in the state of Colorado.").

Many other reasonable burdens similar to the one imposed by the Act are present within our system of justice. For example, section 13–32–101, 6A C.R.S. (1987), requires the payment of a docket fee at the time of first appearance in all civil actions and special proceedings in all courts of record. C.R.C.P. 54(d) provides that "[e]xcept when express provision therefor is made either in a statute of this state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." In disputes between landlords and tenants over the re-

turn of a security deposit, the willful retention of a security deposit renders the landlord liable for, among other things, reasonable attorney fees and court costs. *See* § 38–12–103(3)(a), 16A C.R.S. (1982). Finally, C.R.C.P. 68 requires a prevailing party to pay costs incurred after the receipt of an offer of settlement when the judgment obtained by the prevailing party is not more favorable than the offer. Although this list is not all inclusive, it is demonstrative of the extent of a permissible burden on the right of access to the courts.

■ We conclude that the litigants are not denied their right of access to the courts because the Act provides for de novo review of the decision of the arbitration panel. Furthermore, the requirement that a prevailing party pay the costs of arbitration up to $1,000 if the party does not increase his position by at least 10% at trial does not place an unreasonable burden on the right of access to the courts. Therefore, we hold that the Act does not violate article II, section 6, of the Colorado Constitution.

### C.

Firelock next asserts that article II, section 23, of the Colorado Constitution establishes a constitutional right to a jury trial in civil actions and the Act impermissibly infringes on this right. Firestone also argues that this court created the right to a jury trial in civil cases when we adopted C.R.C.P. 38 and that the Act violates that right.

■ The United States Constitution's guarantee of a civil jury trial provided for in the seventh amendment does not apply to the states. *Edwards v. Elliott*, 88 U.S. 532, 557, 22 L.Ed. 487 (1874).[3] Article II, section 23, provides that "[t]he right of trial by jury shall remain inviolate in criminal cases; but a jury in civil cases in all courts, or in criminal cases in courts not of record, may consist of less than twelve

---

**3.** Furthermore, in *Ex parte Peterson*, 253 U.S. 300, 310, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920), the Supreme Court stated: "The limitation imposed by the [seventh amendment] is merely

that enjoyment of the right of trial by jury be not obstructed, and that the ultimate determination of issues of fact by the jury be not interfered with."

persons, as may be prescribed by law." C.R.C.P. 38 provides:

(a) **Where Jury Right Exists.** Upon demand, in actions for the recovery of specific real or personal property, with or without damages or for money claimed as due on contract, or as damages for breach of contract, or for injuries to person or property, an issue of fact must be tried by a jury. However, after demand a jury trial may be waived by stipulation of the parties.

(b) **Demand.** Any party may demand a trial by jury of any issue triable by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than ten days after the service of the last pleading directed to such issue. Such demand may be endorsed upon a pleading of the party.

. . . .

(d) **Waiver.** The failure of a party to serve a demand as required by this Rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

Although we have held that trial by a jury in a civil action is not a matter of right under the Colorado Constitution, *see Setchell v. Dellacroce,* 169 Colo. 212, 215, 454 P.2d 804, 806 (1969), this action falls within a category of cases for which C.R.C.P. 38 allows a jury trial as of right because the action is for "money claimed as due on contract." The Act, however, does not deprive a party of the right to a jury trial.

■ The Act provides for de novo review by the district court thereby giving either party the opportunity for a jury trial, and the provision for the payment of the costs of arbitration if the party does not increase its position by 10% is not an unreasonable burden on the availability of a jury trial. Reasonable prerequisites to the availability of a jury trial are not unusual. For example, section 13–70–103, 6A C.R.S. (1987), requires the payment of a jury fee "in each cause tried by jury."

■ We hold that the Act does not violate article II, section 23, of the Colorado Constitution because there is no constitutional right to a jury trial in civil cases and the Act does not violate C.R.C.P. 38 because it does not preclude either party from rejecting the result of the arbitration and proceeding to the district court for a de novo jury trial.

### D.

Firelock next argues that the Act violates article II, section 25, of the Colorado Constitution and the equal protection clause of the United States Constitution. According to Firelock, the Act creates two classifications which violate the right to equal protection. First, the Act treats litigants in the pilot districts differently than litigants outside the pilot districts. Second, within the pilot districts, the Act treats litigants differently based on the monetary amount of the claim.

■ The fourteenth amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The due process clause of article II, section 25, of the Colorado Constitution guarantees the right of equal protection to the citizens of Colorado. *See, e.g., Heninger v. Charnes,* 200 Colo. 194, 197 n. 3, 613 P.2d 884, 886 n. 3 (1980). In interpreting the equal protection guarantee under the Colorado Constitution, we have followed the analytical mode developed by the United States Supreme Court in construing the equal protection clause of the fourteenth amendment. *Tassian v. People,* 731 P.2d 672, 674 (Colo.1987). The equal protection clause guarantees that all persons who are similarly situated will receive like treatment by the law. *See J.T. v. O'Rourke,* 651 P.2d 407, 413 (Colo.1982).

■ Statutes facing a constitutional challenge are presumed to be constitutional, and the party challenging the statute bears the burden of proving it to be unconstitutional beyond a reasonable doubt.

*High Gear and Toke Shop v. Beacom,* 689 P.2d 624, 630 (Colo.1984). We must first decide which standard of review applies to a challenge to the Act, and then we must apply that standard.

Firelock argues that a standard of strict judicial scrutiny must be applied in resolving its equal protection challenge because the Act infringes on Firelock's fundamental rights, namely, the right of access to court and the right to a trial by jury. To pass strict scrutiny, the government must establish that the statutory classification is necessarily related to a compelling governmental interest. *See Parrish v. Lamm,* 758 P.2d 1356, 1370 (Colo.1988). "In the absence of a statutory infringement on a fundamental right or the creation of a suspect class, ... equal protection of the laws is satisfied if the statutory classification has a reasonable basis in fact and bears a reasonable relationship to a legitimate governmental interest." *Lee v. Colorado Dep't of Health,* 718 P.2d 221, 227 (Colo. 1986). "When a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests." *Zablocki v. Redhail,* 434 U.S. 374, 388, 98 S.Ct. 673, 682, 54 L.Ed.2d 618 (1978); *see also MacGuire v. Houston,* 717 P.2d 948, 952–53 (Colo.1986) (Although a restriction on eligibility to serve as an election judge affects the fundamental right of association for political purposes, the injury to the right "is not of such character and magnitude to require strict scrutiny.").

As discussed in part III.B. regarding the right of access to courts and part III.C. regarding the right to trial by jury, the Act does not unreasonably infringe upon or "significantly interfere with" any fundamental right. Furthermore, neither of the classifications creates a suspect class, such as one based on race or national origin. Therefore, the strict scrutiny standard is not the correct standard to apply. Because the strict scrutiny standard is not appropriate and because there is no classification triggering an intermediate standard of review, *see, e.g., Kadrmas v. Dickinson Pub-*

*lic Schools,* —— U.S. ——, ——, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988); *Tassian,* 731 P.2d at 675, the rational basis standard is the applicable standard of review.

We next examine the classifications advanced by Firelock to determine whether they are rationally related to a legitimate governmental interest. First, the General Assembly's decision to examine the success or failure of the Act in eight pilot districts is not a violation of equal protection.

"The Fourteenth Amendment does not prohibit legislation merely because it is special, or limited in its application to a particular geographical or political subdivision of the state." Rather, the Equal Protection Clause is offended only if the statute's classification "rests on grounds wholly irrelevant to the achievement of the State's objective."

*Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 70–71, 99 S.Ct. 383, 389–90, 58 L.Ed.2d 292 (1978) (citations omitted); *accord Kadrmas v. Dickinson Public Schools,* —— U.S. ——, ——, 108 S.Ct. 2481, 2489, 101 L.Ed.2d 399 (1988).

Here, the General Assembly chose to examine the success or failure of the Act by implementing its provisions in several judicial districts for a limited period of time during which evidence could be gathered to determine whether the Act would be beneficial on a statewide basis. The purpose of the General Assembly is evident from the Act's provision for an annual report from the judicial department to the General Assembly evaluating the management of the pilot project, the training of arbitrators, and the availability of arbitrators. *See* § 13–22–408, 6A C.R.S. (1987).

Second, it is not unreasonable for the General Assembly to determine that claims below $50,000 should be subject to arbitration while claims above $50,000 are not. In *Bushnell v. Sapp,* 194 Colo. 273, 571 P.2d 1100 (1977), we addressed a similar argument with respect to the Colorado Auto Accident Reparations Act or "No-fault statute," sections 10–4–701 to 10–4–

723, 4A C.R.S. (1987). In that case, the appellant argued that the $500 medical expense threshold created an arbitrary classification and thereby denied him equal protection of the laws. We rejected this argument, stating:

> Where and how to draw the line between major and minor claims of this nature is for the legislature to determine, and not the courts....
>
> We do not find those criteria here to be unreasonable. Nor do we find the resulting classifications to be arbitrary or irrational. Perfection in classifications has never been constitutionally required and the fact that some inequity may result is not enough to invalidate a legislative classification based on rational distinctions.

*Id.* at 1106 (citations omitted). Here, the General Assembly's choice that the Act apply to claims of $50,000 and below is not irrational. Other examples of reasonable monetary classifications include a $5,000 limitation in county court, § 13–6–104(1), 6A C.R.S. (1987), a $2,000 limitation in the small claims division of county court, § 13–6–403, 6A C.R.S. (1988 Supp.), and a $50,000 limitation for diversity jurisdiction in federal court, 28 U.S.C.A. § 1332 (West Supp.1989).

Arbitration is favored by the law in Colorado. *See Dominion Ins. Co. v. Hart,* 178 Colo. 451, 498 P.2d 1138 (1972); *Ezell v. Rocky Mountain Bean & Elevator Co.,* 76 Colo. 409, 232 P. 680 (1925); *see also Rodriguez de Quijas v. Shearson/American Express, Inc.,* — U.S. —, —, 109 S.Ct. 1917, 1920, 104 L.Ed.2d 526 (1989) (a predispute agreement to arbitrate claims under the 1933 Securities Act was enforceable because, among other things, the presumption of disfavoring arbitration proceedings is outmoded). Arbitration promotes quicker resolution of disputes by providing an expedited opportunity for the parties to present their cases before an unbiased third party. *See* Norris, *National Trends in Mandatory Arbitration,* 17 Colo.Law. 1313 (1988); Littlefield, *Court–Annexed Arbitration Comes to Colorado,* 16 Colo. Law. 1941 (1987). By expediting the adversary process, arbitration promotes quicker

settlement of cases thereby speeding up access to the courts and decreasing the costs to the parties. *See* Norris, *National Trends in Mandatory Arbitration,* 17 Colo.Law. 1313 (1988); Littlefield, *Court–Annexed Arbitration Comes to Colorado,* 16 Colo.Law. 1941 (1987).

Although administrative convenience is not a legitimate governmental purpose, *see Tassian,* 731 P.2d at 676, we believe that the governmental interest advanced by arbitration is more than mere administrative convenience. When the governmental interest served by arbitration is considered in light of the burden placed on the parties, we have no trouble concluding that the Act promotes a legitimate governmental interest and the procedures created by the Act are reasonably related to that interest.

Accordingly, we hold that the Act does not violate the equal protection guarantee of the United States and Colorado Constitutions.

### E.

Firelock next argues that article XVIII, section 3, of the Colorado Constitution prohibits the General Assembly from passing legislation imposing arbitration on employers and employees without their consent. Therefore, according to Firelock, the General Assembly cannot constitutionally impose arbitration on parties without their consent.

Article XVIII, section 3, provides:

> It shall be the duty of the general assembly to pass such laws as may be necessary and proper to decide differences by arbitrators, to be appointed by mutual agreement of the parties to any controversy who may choose that mode of adjustment. The powers and duties of such arbitrators shall be as prescribed by law.

In *In re Bill Relating to Arbitration,* 9 Colo. 629, 21 P. 474 (1886), we stated:

> We are of the opinion that section 3, art. 18, neither contemplates nor admits of a law providing for the compulsory submission of differences to arbitration. A submission of differences to the deci-

**1100**

sion of arbitrators must be by mutual agreement of the parties to the controversy, who (in the language of the section) choose that mode of adjustment. *Id.* at 630, 21 P. at 474.

■ Firelock asserts that this case is dispositive of the issue before us. We disagree. *In re Bill Relating to Arbitration* involved legislatively imposed binding arbitration. Here, on the other hand, the Act provides for non-binding arbitration with de novo review by the district court. Nothing in the language of article XVIII, section 3, speaks to the question of whether the General Assembly can pass laws relating to non-binding arbitration. We conclude that article XVIII, section 3, does not control the dispute before us and, therefore, does not prohibit the General Assembly from enacting the legislation at hand.

We conclude that the Mandatory Arbitration Act, §§ 13–22–401 to 13–22–409, 6A C.R.S. (1987), does not violate the Colorado Constitution or the United States Constitution. Therefore, we discharge the rule to show cause and direct the district court to proceed with the assignment of the case to arbitration.

QUINN, C.J., does not participate.

ERICKSON, J., specially concurs.

LOHR, J., dissents.

ERICKSON, Justice, specially concurring:

While I acknowledge that the right of access to the courts is an important one, Colo. Const. art. II, § 6, the burgeoning case load in our courts has itself caused delay and increased costs. Access to the courts for all litigants may be improved by different alternatives for dispute resolution, such as arbitration and mediation. *See* McKay, *The Many Uses of Alternative Dispute Resolution,* 40 Arb.J. 12 (Sept. 1985).

In my view, the mandatory arbitration pilot project in issue was a legislative method of reducing delay and providing access to the courts by winnowing out those cases that can be resolved by simpler and less costly methods. It is certainly not obvious to me that the method selected by the legislature will prevent some litigants from obtaining access to the courts. Since a number of cases may be satisfactorily resolved before trial, it would appear that arbitration will actually improve access to the courts. *See* Levin, *Court Annexed Arbitration,* 16 J.Law Reform 542 (Spring 1983). Accordingly, I concur in the majority's decision to discharge the rule.

LOHR, Justice, dissenting:

I respectfully dissent. The majority holds that the Mandatory Arbitration Act, §§ 13–22–401 to 13–22–409, 6A C.R.S. (1987), violates neither the Colorado Constitution nor the due process or equal protection clauses of the fourteenth amendment to the United States Constitution. Unlike the majority, I am persuaded that the Mandatory Arbitration Act violates the right of every person to obtain access to the courts as guaranteed by article II, section 6, of the Colorado Constitution. I would therefore make the rule issued in this case absolute. Because I would resolve the case on right of access grounds, I would not reach the other constitutional arguments raised by the defendant, Firelock Incorporated.

Article II, section 6, of the Colorado Constitution states:

Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay.

We have previously recognized that this provision "guarantees to every person the right of access to courts of justice in this state." *Board of County Comm'rs v. Barday,* 197 Colo. 519, 522, 594 P.2d 1057, 1059 (1979); *see also People v. Spencer,* 185 Colo. 377, 381, 524 P.2d 1084, 1086 (1974). The constitutional right of access to the courts means "that for any act of another *which constitutes an injurious invasion of any right of the individual which is recognized by or founded upon any applicable principle of law,* statutory or common, the courts shall be open to him

and he 'shall have remedy, by due course of law.' " *Goldberg v. Musim,* 162 Colo. 461, 469, 427 P.2d 698, 702 (1967) (quoting *Cason v. Baskin,* 20 So.2d 243, 250 (Fla. 1945)) (emphasis in original). Article II, section 6, "limits very stringently the power to exclude resident plaintiffs from our court system where jurisdiction has otherwise been properly established." *McDonnell–Douglas v. Lohn,* 192 Colo. 200, 201, 557 P.2d 373, 374 (1976) (because of article II, section 6, the doctrine of *forum non conveniens* has only the most limited application in Colorado courts); *accord Casey v. Truss,* 720 P.2d 985 (Colo.App.1986), *cert. denied,* No. 86SC114 (Colo.Sup.Ct. June 16, 1986). The lesson of *McDonnell–Douglas* is that we must carefully scrutinize any innovative procedure, however well intended, that interferes with the fundamental right [1] of every person to obtain access to the courts to obtain redress for their legally cognizable grievances.

I do not read the cases cited by the majority, *People v. Spencer,* 185 Colo. 377, 524 P.2d 1084 (1974), and *Board of County Comm'rs v. Winslow,* 706 P.2d 792 (Colo. 1985), *cert. denied,* 475 U.S. 1018, 106 S.Ct. 1204, 89 L.Ed.2d 317 (1986), as holding that "a burden on a party's right of access to the courts will be upheld as long as it is reasonable." Maj. op. at 1096. Rather, I view *Spencer* and *Winslow* as holding only that the trial courts of this state are not constitutionally prohibited from enjoining *pro se* appearances in certain extreme cases involving a history of abuse of the judicial process. In reaching this conclusion in *Spencer* and *Winslow,* we acknowledged that under some circumstances a litigant's right of access to the courts "must yield to the interests of other litigants and of the public in general in protecting judicial resources from the deleterious impact of repetitious, baseless *pro se* litigation." *Winslow,* 706 P.2d at 794. Additionally, we held in *Winslow* that "[f]orbidding a party from filing cases *pro se* does not infringe upon his constitutional right of access to the courts because he may still obtain access to judicial relief by employing an attorney authorized to practice in the state of Colorado." *Winslow,* 706 P.2d at 794–95; *accord Barday,* 197 Colo. at 522, 594 P.2d at 1059 (also noting that the enjoined litigant "is still free to appear *pro se* in his own *defense* ") (emphasis in original).

The cases assigned to mandatory arbitration are not chosen for reasons relating to their deleterious impact on the judicial process. On the contrary, all cases in which a party seeks money damages in the sum of $50,000 or less, and only those cases, are siphoned off from the courts and diverted into the arbitration forum. § 13–22–402(2). The special concerns that motivated the issuance of injunctions against *pro se* litigants in cases such as *Spencer* and *Winslow*—preventing abuse of the judical process, refusing to allow the judicial process to be used to harass others, and conserving limited judicial resources by not devoting them to the resolution of repetitious, meritless claims—are not present in this case. *See Winslow,* 706 P.2d at 794.

The procedure by which a litigant must submit his claim for mandatory arbitration as a condition precedent to trying his case in a court restricts access to the courts in two important ways. First, the litigant may not present his claim to a court until he has undergone the delay [2] and expense

---

**1.** *Cf. Protect Our Mountain Environment, Inc. v. District Court,* 677 P.2d 1361, 1365 (Colo.1984), in which we stated that "collective activity undertaken to obtain meaningful access to the courts has been recognized as 'a fundamental right within the protection of the First Amendment,' " (quoting *United Transportation Union v. State Bar of Michigan,* 401 U.S. 576, 585, 91 S.Ct. 1076, 1082, 28 L.Ed.2d 339 (1971)), and that "the right to petition the government for redress of grievances necessarily includes the right of access to the courts" in order to "seek vindication of federal and state rights and ensure accountability in the affairs of government." We recog-

nized that the right of access to the courts also finds expression in article II, section 6, of the Colorado Constitution. *Protect Our Mountain Environment,* 677 P.2d at 1365 n. 5.

**2.** The arbitration proceeding "shall be held within ninety days of the date on which the case is at issue between the parties." § 13–22–404(1). "The arbitrators shall file their decision with the court within ten days of the hearing...." § 13–22–404(7). Each party has thirty days after the arbitrators' decision is filed to demand a trial de novo. §§ 13–22–404(8), 13–22–405(1). Thus, the arbitration process is designed to de-

attendant to an arbitration proceeding. § 13–22–402(2). Second, in order to obtain access to a court after arbitration has been completed, the litigant must accept the consequence that he will be required to pay the costs of the arbitration proceeding, including arbitrator fees, up to a maximum of $1,000 should he fail to improve his position by more than ten percent. § 13–22–405(3). These burdens of time and expense are considerable and will likely have the practical effect of preventing litigants with smaller claims from ever obtaining access to the courts to assert them. In short, for some litigants these barriers to access to the courts will not simply burden such access but as a practical matter will bar entry into a judicial forum. The majority does not explain why these obviously important limitations on a litigant's fundamental right of access to the courts are permissible except to analogize them to the collection of docket fees, the award of costs to a prevailing party, and the imposition of certain other incidental costs of litigation applicable in special situations. *See* maj. op. at 1096. The majority simply offers the conclusion that the burdens are reasonable. I cannot agree that it is constitutionally permissible to burden the fundamental right of access to the courts in these significant ways.

In sum, I regard the mandatory arbitration process at issue in this case as limiting access to the courts in a manner that conflicts with both the spirit and the letter of article II, section 6, of the Colorado Constitution. *See Aldana v. Holub*, 381 So.2d 231, 238 (Fla.1980) (medical mediation statute violated due process because application of its rigid jurisdictional periods proved arbitrary and capricious, and enlargement of these periods would effectively deprive claimants of access to the courts); *People ex rel. Christiansen v. Connell*, 2 Ill.2d 332, 118 N.E.2d 262, 265–69 (1954) (statute that imposed mandatory waiting period before divorce action could be filed held to obstruct litigants' constitutional right of access to the courts without

fer resort to the courts for up to 130 days, exclusive of the time required for the hearing

delay); *State ex rel. Cardinal Glennon Memorial Hosp. v. Gaertner*, 583 S.W.2d 107, 110 (Mo.1979) (statute requiring that medical malpractice claims be referred to medical malpractice review panel before being filed in court held unconstitutional based on fact that it "imposes a procedure" as a precondition to constitutionally established right of access to the courts); *Jiron v. Mahlab*, 99 N.M. 425, 659 P.2d 311, 313 (1983) (statute requiring medical malpractice claimant to appear before a review commission prior to filing suit deprives plaintiffs of their constitutional right of access to the courts if the review requirement "causes undue delay prejudicing a plaintiff by the loss of witnesses or parties"); *cf. Mattos v. Thompson*, 491 Pa. 385, 421 A.2d 190, 195–96 (1980) (striking as unconstitutional a statute giving arbitration panel original jurisdiction over medical malpractice claims where delays involved in statutory procedures oppressively burdened the right to a jury trial so as to "make the right practically unavailable").

In reaching the conclusion that the Mandatory Arbitration Act cannot be squared with the constitutional right of access to the courts, I do not mean to imply that all efforts and methods to resolve disputes outside of the judicial forum violate that constitutional right. I would hold only that the particular mandatory procedure involved in this case imposes constitutionally impermissible burdens on that right. I would therefore make the rule absolute.